**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2267
_____

UNITED STATES OF AMERICA

v.

SHAKIRA WILLIAMS,
                              Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 2-03-cr-00776-002)
District Judge: Honorable Legrome D. Davis
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
December 15, 2011

Before:  SLOVITER, VANASKIE and GREENBERG,
*Circuit Judges*

(Filed April 3, 2012)

Robert Epstein, Esq.
Office of General Counsel

Federal Community Defender Office for the Eastern District
of Pennsylvania
601 Walnut Street
The Curtis Center, Suite 540 West
Philadelphia, PA 19106
        *Counsel for Appellant*

Frank R. Costello, Jr., Esq.
Office of United States Attorney
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106
        *Counsel for Appellee*

_____

OPINION

_____

VANASKIE, *Circuit Judge*.

Shakira Williams brings this appeal from the District Court's May 6, 2011 Order revoking her supervised release and imposing a 24-month prison sentence. Williams contends that this sentence exceeds the maximum term of imprisonment authorized under 18 U.S.C. § 3583. Finding no error in the District Court's sentencing decision, we will affirm the Judgment of the District Court.

I.

On January 28, 2004, Williams pled guilty to four counts of bank robbery, in violation of 18 U.S.C. §§ 2113(a) and 2, and one count of conspiracy, in violation of 18 U.S.C. § 371. On May 3, 2005, Williams was sentenced to 48

months' imprisonment, followed by a period of three years of supervised release. Williams completed her original prison sentence and began supervised release on May 16, 2007. Since then, she has been charged with numerous violations of the conditions of her supervised release, including, *inter alia*: failure to report for drug testing; failure to report to her probation officer; positive drug tests; leaving a residence where she was under house arrest; removing an electronic monitoring bracelet; expulsion from a halfway house for failing to follow the rules; lying to her probation officer about her employment status; and failing to appear for a court proceeding.

Williams' violations led to several modifications and revocations of her supervised release. On December 7, 2007, the District Court modified the conditions of her supervised release to include four months in a halfway house. On September 24, 2008, following a hearing, the District Court revoked her supervised release and sentenced her to five months' imprisonment and 31 months of supervised release. Williams resumed supervised release on December 16, 2008, but a month later she was charged with further violations. On February 23, 2009, following a hearing, the District Court again modified the conditions of her supervised release to include four months of home detention with electronic monitoring.

Williams' probation officer subsequently charged her with multiple violations of her supervised release. On July 29, 2009, following a hearing on these violations, the District Court revoked Williams' supervised release and sentenced her to 19 months' imprisonment and twelve months of supervised release, with six of the twelve month supervised

release term to be served in a halfway house, and the remaining six to be served under home detention.

On appeal of that sentence, Williams argued that her combined 25-month sentence of incarceration and home detention exceeded the 24-month maximum prison term authorized under 18 U.S.C. § 3583(e)(3). She argued that any term of home detention counts as imprisonment under this provision, because § 3583(e)(4) states that a term of home detention "may be imposed only as an alternative to incarceration." Since Williams conceded that this issue was not preserved, this Court applied the plain error standard of review. *United States v. Williams*, 387 Fed. Appx. 282, 284 (3d Cir. 2010). Due to a circuit split on the meaning of the statute—an issue of first impression in this Court—we found that the alleged error was not plain, and we therefore declined to review the issue. *Id.* at 286.

On November 15, 2010, Williams was released from prison and began confinement in a halfway house. Several weeks later, she was charged with several new violations of her supervised release conditions. Williams argued that, in light of the cumulative revocation imprisonment already served—27 months and five days, including three months and five days of home detention[1]—the maximum prison term the Court could impose was eight months and 26 days. In response to Williams' arguments concerning the effect of prior sentences imposed for supervised release violations on the amount of prison time that could be imposed for her latest

---

[1] Williams did not complete the full six month home detention period, thus explaining why she claimed credit for only three months and five days.

violations, the District Court concluded that the maximum prison term it could impose was not reduced by the aggregate length of previously-served revocation imprisonment. In an Order issued on May 6, 2011, the District Court revoked Williams' supervised release and imposed what it viewed as the statutory maximum sentence: 24 months' imprisonment, with no term of supervised release to follow. Williams appeals this sentence as unlawful, and asks this Court to vacate and remand for resentencing.

## II.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). We exercise plenary review over matters of statutory interpretation. *United States v. Doe*, 564 F.3d 305, 307 n.2 (3d Cir. 2009).

When interpreting the disputed provisions of a statute, we look first to the language of the statute to determine the law's plain meaning. *United States v. Gregg*, 226 F.3d 253, 257 (3d Cir. 2000). "If the language of the statute expresses Congress's intent with sufficient precision, the inquiry ends there and the statute is enforced according to its terms." *Id.* (citing *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989)); *see also Chevron U.S.A., Inc. v. Natural Res. Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984) ("If the intent of Congress is clear, that is the end of the matter . . ."). "Where the statutory language does not express Congress' intent unequivocally, a court traditionally refers to the legislative history and the atmosphere in which the statute was enacted in an attempt to determine the congressional purpose." *Gregg*, 226 F.3d at 257.

## III.

Williams first contends that her 24-month sentence exceeds the maximum term of imprisonment authorized under 18 U.S.C. § 3853, and that the Court misconstrued the statute by finding otherwise. At the crux of this appeal is the meaning of § 3583(e)(3), which governs the modification and revocation of supervised release following imprisonment. It provides that a court may:

> [R]evoke a term of supervised release, and require the defendant to serve in prison all or part of the *term of supervised release authorized by statute for the offense that resulted in such term of supervised release* without credit for time previously served on postrelease supervision, if the court . . . finds by a preponderance of the evidence that the defendant violated a condition of supervised release, except that a defendant whose term is revoked under this paragraph may not be required to serve *on any such revocation . . .* more than 2 years in prison if such offense is a class C or D felony . . .

18 U.S.C. § 3583(e)(3) (emphasis added). The maximum statutorily-authorized term of supervised release that a court can impose on a defendant for "the offense that resulted in such term of supervised release" is specified in § 3583(b):

> (b) Authorized terms of supervised release. – Except as otherwise provided, the authorized terms of supervised release are –
>
> . . .

6

(2) for a Class C or Class D felony, not more than three years . . . .

Therefore, under subsection (e)(3), the maximum term of imprisonment that the District Court could impose in this case for a violation of supervised release conditions was the lesser of "the term of supervised release authorized by statute for the offense that resulted in such term of supervised release," i.e., three years, or the cap for the particular class of felony offense set by the concluding clause, i.e., two years. Accordingly, the District Court determined that 24 months was the maximum prison term that it could impose on Williams for each supervised release revocation.

Williams contends that in cases like hers, where more than one term of post-revocation imprisonment has been imposed, "subsection (b) functions in tandem with a second provision, subsection (h)." (Appellant Br. at 17-18.) Section 3583(h) concerns the term of supervised release that may be imposed following a term of post-revocation imprisonment, and provides:

> When a term of supervised release is revoked and the defendant is required to serve a term of imprisonment, the court may include a requirement that the defendant be placed on a term of supervised release after imprisonment. The length of such a term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release.

Thus, subsection (h) provides that the term of supervised release following a term of revocation imprisonment—also known as the supervised release "tail"—cannot exceed the term of supervised release that could be imposed for the original offense (in this case, three years), less the aggregate length of imprisonment imposed for all prior revocations of supervised release. In other words, the authorized term of a supervised release tail progressively diminishes by the length of successive terms of post-revocation imprisonment.

Williams asserts that the aggregate limit on the supervised release tail under subsection (h) interacts with subsection (e)(3) to impose a similar limit on post-revocation imprisonment. She reasons that under subsection (e)(3), the statutorily "authorized term of *supervised release* is also the authorized length of post-revocation *imprisonment*." (Appellant Br. at 19.) She further contends that "[s]ubsection (h) is clearly a 'statute,' and thus it—not only subsection (b), as held by the district court—must inform the meaning of 'term of supervised release authorized by statute for the offense.'" (Id. at 20.) She concludes that, since the authorized term of supervised release is reduced by the amount of prison time a defendant served for previous release violations, the maximum term of post-revocation imprisonment under subsection (e)(3) is likewise progressively reduced.

We reject Williams' interpretation of § 3583 because, as the District Court aptly observed, it rests on a "selective use of statutory language, not the statute itself." (A. 8.) Subsection (e)(3) refers to the "term of supervised release authorized by statute *for the offense that resulted in such term of supervised release*." (Emphasis added). This language unambiguously sets the maximum prison sentence by

8

reference to the length of supervised release statutorily authorized for the conviction offense, not for the length of supervised release authorized after a revocation imprisonment. It is only by ignoring the words emphasized above—"for the offense that resulted in such term of supervised release"—that Williams can maintain that subsection (h) sets the terms of supervised release for the purposes of subsection (e)(3).

Indeed, subsections (b) and (h) establish a "term of supervised release" for different purposes: subsection (b) defines the term of supervised release for the original offense, and subsection (h) defines the term of a supervised release tail. Subsection (e)(3) clearly fixes the term of post-revocation imprisonment according to the former, and gives no indication that the aggregate limit of supervised release time under subsection (h) applies as well to the term of imprisonment that may be imposed when supervised release is revoked. We therefore reject Williams' construction as contrary to the plain language of the statute, and agree with the District Court that subsection (e)(3) is not subject to the aggregate limit of subsection (h).

We find support for our holding in *United States v. Hampton*, 633 F.3d 334 (5th Cir. 2011). In *Hampton*, the Fifth Circuit rejected the argument that the phrase "term of supervised release authorized by statute" in subsection (e)(3) itself imposes an aggregate limit on post-revocation imprisonment. *Id*. at 338-39. Although the *Hampton* Court did not directly consider whether subsection (h) imposes an aggregate limit on post-revocation imprisonment by defining the "term of supervised release authorized by statute," it did conclude that its "reading of § 3583(e) is harmonious with §

9

3583(h)." *Id.* at 339.[2]  In this respect, the Court explained the effects of subsection (h) on post-revocation imprisonment:

> Section 3583(h) . . . acts as a cap on the aggregate amount of post-revocation supervised release a defendant may receive.  This, in turn, imposes an indirect limit on the aggregate amount of revocation imprisonment.  Once a defendant has received as much revocation imprisonment as § 3583(b) authorizes for supervised release, the defendant is no longer eligible for post-revocation supervised release.  Because the defendant will no longer be eligible for supervised release, she cannot be at risk for "an endless cycle of consecutive terms of imprisonment and supervised release based on a single underlying offense."

*Id.* (quoting *United States v. Jackson*, 329 F.3d 406 (5th Cir. 2003) (per curiam)).  The *Hampton* Court's interpretation of the statute—and particularly its view of the relationship between these two subsections—is therefore consistent with and supports our reading of the statute.

---

[2] Although Hampton did advance this argument about subsection (h) as an alternative to her principal claim under subsection (e)(3), the Court did not substantively address it. 633 F.3d at 342, n.4.  Instead, the Court briefly dismissed the argument, observing that "Hampton provides no support for her reading," and concluding: "it is merely a recapitulation of her aggregation argument, which we have addressed at length in this opinion." *Id.*

Williams contends that the principle of statutory construction known as the "anti-superfluousness canon," *Corley v. United States*, 556 U.S. 303, 314 n.5 (2009), requires that subsection (e)(3) be read together with subsection (h) to impose an aggregate limit on revocation imprisonment. Williams asserts that because the limitation on revocation imprisonment expressed in the concluding clause of subsection (e)(3) is always equal to or less than "the term of supervised release authorized by statute for the offense that resulted in such term of supervised release," subsection (e)(3) must be construed by interpreting "the 'term of supervised release authorized by statute' limitation to apply in the aggregate." (Appellant's Br. at 24.) Otherwise, she asserts, "the 'term of supervised release authorized by statute' language never has any effect." (Id. at 25.)

This argument ignores the legislative history of subsection (e)(3). The language in question—"to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release"—was added in 1994 to authorize courts "to impose a term of revocation imprisonment without being limited by the amount of supervised release the original sentencing court imposed." *Hampton*, 633 F.3d at 341 (citing *Johnson v. United States*, 529 U.S. 694, 705 (2000)). Prior to this legislative change, subsection (e)(3) was interpreted to preclude a court from imposing a revocation term greater than the period of supervised release initially imposed by the court. *Id.* Thus, the provision in question is independent of the concluding clause of subsection (e)(3), which was amended in 2003 to plainly establish "a per revocation limit on revocation imprisonment." *Id.* Considered in light of the "legislative history and the atmosphere in which the statute

11

was enacted," *Gregg*, 226 F.3d at 257, it is evident that Congress did not intend to set an aggregate cap on successive revocation imprisonment in subsection (e)(3) when it added language that authorized courts to impose a term of revocation imprisonment that exceeded the supervised release term originally imposed. Accordingly, Williams' reliance upon the anti-superfluousness canon is misplaced. *See Hampton*, 633 F.3d at 341.

Finally, maintaining that § 3583 is ambiguous, Williams argues that the rule of lenity supports her interpretation. Since we conclude that subsection (e)(3) is unambiguous, the rule of lenity is inapplicable in this case. *See Ron Pair Enters., Inc.*, 489 U.S. at 241; *Reno v. Koray*, 515 U.S. 50, 65 (1995) ("The rule of lenity applies only if, after seizing everything from which aid can be derived, we can make 'no more than a guess as to what Congress intended.") (internal citations and quotation marks omitted).[3]

IV.

For the foregoing reasons, we will affirm the judgment of the District Court.

---

[3] Williams also challenges her sentence on the ground that the period of home detention she served must be counted towards the aggregate limit on post-revocation imprisonment under subsection (h). This argument is moot in light of our finding that subsection (h) does not impose an aggregate limit on successive revocation imprisonment.