**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 14, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellant,

v.

HOWARD COLLINS,

      Defendant - Appellee.

No. 15-3084

---

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 2:05-CR-20087-JWL-3)**

---

Richard A. Friedman, Attorney, Appellate Section, Criminal Division, United States Department of Justice, Washington, D.C. (Barry R. Grissom, United States Attorney, District of Kansas, James A. Brown, and Scott C. Rask, Assistant United States Attorneys, Office of the United States Attorney for the District of Kansas, Leslie R. Caldwell, Assistant Attorney General, and Sung-Hee Suh, Deputy Assistant Attorney General, with him on the briefs), for Plaintiff-Appellant.

Daniel T. Hansmeier, Appellate Chief, Kansas Federal Public Defender, Kansas City, Kansas (Melody Bannon, Chief Federal Public Defender, Kansas Public Defender, Kansas City, Kansas, with him on the brief), for Defendant-Appellee.

---

Before **HOLMES**, **BALDOCK**, and **MATHESON**, Circuit Judges.

---

**HOLMES**, Circuit Judge.

Howard Collins was serving a term of supervised release as part of his sentence for knowingly and intentionally distributing more than five grams of a mixture or substance containing cocaine base (i.e., crack cocaine), in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii). His supervised release was revoked after he failed several drug tests. He was reincarcerated and received a new term of supervised release. Upon his release from prison, his supervised release was revoked a second time after he again failed multiple drug tests and failed to participate in a required substance-abuse program. Following his second revocation, the district court sentenced Mr. Collins to twelve months' imprisonment, having determined that the maximum term of imprisonment that it could impose under 18 U.S.C. § 3583(e)(3) was one year. Exercising jurisdiction under 28 U.S.C. § 1291, we reject this application of § 3583(e)(3), **reverse** the district court's sentencing order and **remand** the case, instructing the court to **vacate** its revocation judgment and resentence Mr. Collins.

**I**

An undercover agent of the Kansas Bureau of Investigation arranged through an informant to conduct three transactions involving the sale of crack cocaine. On November 6, 2003, the agent purchased 7.11 grams of crack cocaine at a roadside park near Baxter Springs, Kansas. Mr. Collins and the informant were among the passengers in the vehicle from which the agent made the

2

purchase. Following the first transaction, the informant supplied the agent with two telephone numbers to arrange subsequent drug purchases. On November 13, 2003, after calling one of the telephone numbers and speaking with Mr. Collins, the agent purchased 4.66 grams of crack cocaine in the parking lot of a shopping mall in Pittsburg, Kansas. On December 9, 2003, after calling both telephone numbers, the agent conducted a third transaction, this time purchasing 5.47 grams of crack cocaine from Mr. Collins and two other males in the shopping mall in Pittsburg. In an interview in November 2005, Mr. Collins recalled selling crack cocaine on at least five other occasions.

On August 17, 2005, Mr. Collins was indicted along with two other men on charges of conspiracy to distribute and possess with intent to distribute more than fifty grams of a mixture or substance containing cocaine base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(iii), and three counts of knowingly and intentionally distributing more than five grams of a mixture or substance containing cocaine base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii). Upon entering into a plea agreement, Mr. Collins was convicted on one count of distribution, in violation of § 841(b)(1)(B)(iii). The district court imposed a sentence of eighty-four months' imprisonment to be followed by four years of supervised release. Over the course of the next two years, for reasons not material here, the district court reduced Mr. Collins's prison term to sixty months; his supervised release term remained unchanged.

3

After completing his prison sentence, Mr. Collins failed several drug tests in October 2010 and his supervised release was revoked the following July. As a result of this revocation, Mr. Collins was reincarcerated for a term of eighteen months and sentenced to a new three-year term of supervised release. Upon his second release from prison, Mr. Collins was found in possession of a controlled substance, failed several drug tests, and was terminated from a substance-abuse treatment program. At a revocation hearing on March 2, 2015, Mr. Collins admitted to these supervised-release violations, and the district court revoked his second supervised release term.

Following this second revocation, the district court sentenced Mr. Collins to twelve months' imprisonment to be followed by a two-year term of supervised release. In sentencing Mr. Collins, the district court determined that the statutory maximum term of imprisonment that it could impose under 18 U.S.C. § 3583(e)(3) was one year, believing that it was restricted by the maximum supervised release term that was authorized for the violation forming the basis for (i.e., resulting in) the first revocation of supervised release, rather than the maximum term authorized for the original offense of conviction, in resentencing Mr. Collins. The government timely appealed from the district court's final judgment.

4

## II

The sole issue the government raises on appeal is whether the district court erred in sentencing Mr. Collins to twelve months' imprisonment under an ostensible one-year statutory maximum based on § 3583(e)(3), which limits reincarceration following revocation of supervised release to the "term of supervised release authorized by statute for *the offense* that resulted in such term of supervised release," 18 U.S.C. § 3583(e)(3) (emphasis added). Resolution of this issue turns on a question of statutory interpretation: in determining the maximum allowable term of reincarceration following a *second* revocation of supervised release, does § 3583(e)(3) refer to the original criminal offense for which the defendant was convicted *or* the subsequent violation of the conditions of supervised release that resulted in his first revocation?[1]

---

[1] We have previously identified this open question and declined to answer it. *See United States v. Lamirand*, 669 F.3d 1091, 1099 n.7 (10th Cir. 2012) ("[F]ollowing the reasoning of [defendant's] argument, the district court would have been obliged to look to those offenses (i.e., the supervised-release violations), instead of his underlying drug-trafficking conviction for purposes of determining . . . the maximum imprisonment terms provided in § 3583(e)(3). . . . We are disinclined, however, to reach the merits of this argument."); *United States v. Hernandez*, 655 F.3d 1193, 1197 (10th Cir. 2011) ("Mr. Hernandez presses this appeal on the express understanding that the term *offense* as used in § 3583(e) refers to his underlying criminal conviction, and that very well may be exactly right. Indeed, we have previously assumed it is, just as we do today." (citations omitted)). However, at least one panel of our circuit has affirmed a district court order under § 3583(e)(3) according to the severity of the *original* offense. *See United States v. Olinger*, 511 F. App'x 816 (10th Cir. 2013); *cf. United States v. Kelley*, 359 F.3d 1302, 1303 n.1 (10th Cir. 2004) (assuming that § 3583(e) refers to defendant's underlying criminal conviction); *United States v.*

(continued...)

5

To the extent that the government challenges the district court's sentencing order because the court allegedly failed to apply the correct law—and "to the extent that determining the 'correct law' requires us to engage in statutory interpretation—our review is de novo." *United States v. Burkholder*, 816 F.3d 607, 611–12 (10th Cir. 2016); *accord United States v. Porter*, 745 F.3d 1035, 1040 (10th Cir. 2014); *United States v. Sturm*, 672 F.3d 891, 897 (10th Cir. 2012) (en banc); *see also United States v. Nacchio*, 573 F.3d 1062, 1087 (10th Cir. 2009) ("We review questions of statutory interpretation de novo.").

## A

### 1

At the outset, we provide a brief overview of the structure of 18 U.S.C. § 3583(e)(3) to clarify the nature of our interpretive inquiry. Section 3583(e)(3) allows the district court to revoke a term of supervised release upon finding by a preponderance of the evidence that the defendant has violated the conditions of supervised release. The district court may then "require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term . . . without credit for time previously served." 18 U.S.C. § 3583(e)(3). However, Congress included a limiting principle in this provision:

[1](...continued)
*Swenson*, 289 F.3d 676, 677 (10th Cir. 2002) (same), *superseded on other grounds by Hernandez*, 655 F.3d at 1196.

[A] defendant whose term [of supervised release] is revoked under this paragraph may not be required to serve on any such revocation more than 5 years in prison if *the offense that resulted in the term of supervised release* is a class A felony, more than 3 years in prison if such offense is a class B felony, more than 2 years in prison if such offense is a class C or D felony, or more than one year in any other case[.]

*Id.* (emphasis added). As these plain terms reveal, the "offense that resulted in" provision of § 3583(e)(3) operates to limit the maximum term of imprisonment following the revocation of a term of supervised release. The provision is triggered after a defendant's term of supervised release has been revoked.

It is undisputed that the limitation on the maximum term of imprisonment under § 3583(e)(3) relates to the original crime of conviction when a defendant's supervised release term is revoked for the *first* time. However, Mr. Collins argues that, following a *second* revocation of supervised release, the relevant "offense" under § 3583(e)(3) is the violative conduct that gave rise to the first revocation.[2] At Mr. Collins's sentencing, the government disagreed, arguing that

_____

[2] At oral argument, the government framed Mr. Collins's argument such that the term "offense" in subsection (e)(3) of § 3583 refers to the revocation (an act of the court), rather than the underlying transgression that gave rise to the judicial act of revoking supervised release. The government contended that Mr. Collins argued, in distinguishing *United States v. Ford*, 798 F.3d 655 (7th Cir. 2015), that subsection (e)(3) is referring to a revocation, not a violation of supervised release. However, throughout his brief, and particularly in addressing *Ford*, Mr. Collins refers to violations (i.e., transgressions). At oral argument, counsel for Mr. Collins likened the word "conviction" to "revocation," and explained that revocation for an underlying transgression is a penalty analogous to a conviction for underlying criminal conduct. Therefore, we understand Mr. Collins's argument as referring to penalizing violative conduct resulting in

(continued...)

7

§ 3583(e)(3)'s "offense that resulted in" language refers to the original crime of conviction. If the government's interpretation is correct—*viz.*, if the statutory maximum is based on Mr. Collins's original offense, rather than the violation resulting in his first revocation—then the maximum term of imprisonment that Mr. Collins could serve under subsection (e)(3) is three years, rather than the one-year maximum on which the district court based its ruling. In other words, to the extent that Mr. Collins's sentence was based on this legal error, his sentence should reflect the three-year maximum for the class B felony for which he was *first* sentenced. R., Vol. I, at 40 (listing Mr. Collins's offense of conviction as "distribution of more than five grams of cocaine base"); *see* 21 U.S.C. § 841(b)(1)(B) (2000) (restricting term of imprisonment for distribution of "5 grams or more of a mixture or substance . . . which contains cocaine base" to "not . . . less than 5 years and not more than 40 years");[3] 18 U.S.C. § 3559(a)(2) (classifying an offense with a maximum term of imprisonment of "twenty-five years or more, as a Class B felony").

---

[2](...continued)
revocation, just as criminal conduct resulting in conviction for a misdemeanor or felony is penalized.

[3]    The current version of 21 U.S.C. § 841(b)(1)(B)(iii) prohibits the distribution of "28 grams or more of a mixture . . . which contains cocaine base." 21 U.S.C. § 841(b)(1)(B)(iii) (2012).

8

**2**

Our "primary task in interpreting statutes [is] to determine congressional intent." *Coffey v. Freeport McMoran Copper & Gold*, 581 F.3d 1240, 1245 (10th Cir. 2009) (quoting *Russell v. United States*, 551 F.3d 1174, 1178 (10th Cir. 2008)). In doing so, we begin "where all such inquires must begin: with the language of the statute itself." *First Nat'l Bank of Durango v. Woods (In re Woods)*, 743 F.3d 689, 694 (10th Cir. 2014) (quoting *Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 69 (2011)); *see also United States v. West*, 671 F.3d 1195, 1199 (10th Cir. 2012) (stating that "we first and foremost look to the statute's language to ascertain Congressional intent"). "It is well established that 'when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.'" *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004) (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000)); *cf.* Antonin Scalia & Bryan A. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 56 (2012) ("[T]he purpose [of a statute] must be derived from the text, not from extrinsic sources such as legislative history or an assumption about the legal drafter's desires."). "We will look beyond the plain language of a statute *only* if the result is an absurd application of the law." *United States v. Brown*, 529 F.3d 1260, 1265 (10th Cir. 2008); *see also United States v. Sprenger*, 625 F.3d 1305, 1307 (10th Cir. 2010) ("If the terms of the statute are clear and

unambiguous, the inquiry ends and we simply give effect to the plain language of the statute." (quoting *Toomer v. City Cab*, 443 F.3d 1191, 1194 (10th Cir. 2006))).

We do, however, construe statutory language within its broader context. *See Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."); *accord Kunz v. United Sec. Bank (In re Kunz)*, 489 F.3d 1072, 1077 (10th Cir. 2007). Indeed, "the meaning of statutory language, plain or not, depends on context." *In re Woods*, 743 F.3d at 694 (quoting *United States v. Villa*, 589 F.3d 1334, 1343 (10th Cir. 2009)). Put another way, "no statute is an island unto itself. We can look around to provide substance and context to a potentially unclear term." *United States v. Brune*, 767 F.3d 1009, 1022 (10th Cir. Cir. 2014). In total, "[t]he plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Salazar v. Butterball, LLC*, 644 F.3d 1130, 1137 (10th Cir. 2011) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)).

To begin our inquiry, Congress's specific choice of words in § 3583(e)(3)—that is, "the offense that resulted in the term of supervised release"—is noteworthy. The term "offense" traditionally refers to crimes. *See*

10

*Kellogg Brown & Root Servs., Inc. v. United States, ex rel. Carter*, --- U.S. ----, 135 S. Ct. 1970, 1976 (2015) (explaining that the "term 'offense' is most commonly used to refer to crimes"); *see, e.g.*, *Offense*, BLACK'S LAW DICTIONARY (10th ed. 2014) (defining the term "offense" as "[a] violation of the law; a crime, often a minor one"); *Offense*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1566 (2002) (defining "offense" as "an infraction of law: CRIME, MISDEMEANOR"); *see also* 22 C.J.S. *Criminal Law* § 3, at 4 (1989) ("The terms 'crime,' 'offense,' and 'criminal offense' are all said to be synonymous, and ordinarily used interchangeably. 'Offense' may comprehend every crime and misdemeanor, or may be used in a specific sense as synonymous with 'felony,' or with 'misdemeanor,' as the case may be, or as signifying a crime of lesser grade, or an act not indictable, but punishable summarily or by the forfeiture of a penalty."). The Supreme Court, although noting that "the term 'offense' is sometimes used more broadly" and is "not necessarily synonymous" with the word "crime," affirmatively stated that it has a specific meaning within the context of Title 18—the title at issue here. *Kellogg*, 135 S. Ct. at 1976 (noting that, while the term offense is sometimes used to refer to noncriminal conduct, "that is not how the word is used in Title 18"); *cf. id.* ("Although the term appears hundreds of times in Title 18, neither respondent nor the Solicitor General, appearing as an *amicus* in support of respondent, has been able to find a single provision of that title in which 'offense' is employed to denote a civil

11

violation."). Moreover, the Court noted that when Title 18 was enacted, "the very first provision, what was then 18 U.S.C. § 1, classified all offenses as crimes." *Id.* at 1977.

Importantly, unlike offenses, violative conduct resulting in the revocation of supervised release—although "often lead[ing] to reimprisonment"—"need not be criminal and need only be found by a judge under a preponderance of the evidence standard, not by a jury beyond a reasonable doubt." *Johnson v. United States*, 529 U.S. 694, 700 (2000); *see* 18 U.S.C. § 3583(e)(3) (providing that a court may revoke supervised release and require the defendant to serve a term of imprisonment if it "finds by a preponderance of the evidence that the defendant violated a condition of supervised release"). In contrast, "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). Because the revocation of supervised release based on violative conduct does not carry the same burden of proof as the burden required for conviction of a crime, we cannot call the violative conduct a crime or, by extension, an offense. Thus, the "offense that resulted in" language that Congress employed strongly suggests that § 3583(e)(3) imposes a statutory maximum prison term based on the *original* criminal offense of conviction resulting in a term of supervised release.

12

We are not alone in reaching this conclusion. More specifically, our decision is informed by two of our sibling circuits—the First and Seventh Circuits—which have explicitly held that, upon the revocation of a *subsequent* term of supervised release, the statutory maximum prison sentence under § 3583(e)(3) is based on the original crime of conviction. *See United States v. Ford*, 798 F.3d 655, 663 (7th Cir. 2015) ("The phrase 'the offense that resulted in the term of supervised release' refers to the offense for which the defendant was initially placed on supervised release."); *United States v. Tapia-Escalera*, 356 F.3d 181, 185 (1st Cir. 2004) ("[W]here a second violation of conditions occurs, [the offense that resulted in] language necessarily refers back to the original offense of conviction . . . ."). Put another way, we join our sibling circuits in concluding that the term "offense" in § 3583(e)(3) refers to the original offense of conviction.

Moreover, two other circuits, in rejecting slightly different arguments raised by defendants challenging prison terms based on successive revocations, have affirmatively stated that the "offense" referred to in § 3583(e)(3) is the offense of conviction. *See United States v. Cunningham*, 800 F.3d 1290, 1292 (11th Cir. 2015) ("The 'term of supervised release' identified by § 3583(e)(3) is that 'authorized by statute *for the offense*.' This plainly refers to the underlying criminal offense resulting in conviction."); *United States v. Williams*, 675 F.3d 275, 279 (3d Cir. 2012) ("Subsection (e)(3) refers to the 'term of supervised

13

release authorized by statute *for the offense that resulted in such term of supervised release*.' This language unambiguously sets the maximum prison sentence by reference to the length of supervised release statutorily authorized for the conviction offense . . . .").[4]

We further note that other circuits, while not explicitly addressing the issue before us, have assumed that the statutory maximums in § 3583(e)(3) are set by a defendant's underlying criminal conviction when considering the propriety of a sentence following a second (or third) revocation of supervised release. *See United States v. Spencer*, 720 F.3d 363, 370 (D.C. Cir. 2013) (affirming defendant's two-year prison sentence following second revocation of supervised release for class C felony where defendant had served fourteen-month term for

---

[4]     The defendants in *Cunningham* and *Williams* argued that § 3583(h) provides the relevant "term of supervised release authorized by statute for the offense," 18 U.S.C. § 3583(e)(3). *See Cunningham*, 800 F.3d at 1291; *Williams*, 675 F.3d at 279.  In other words, they argued that subsection (h) establishes a cap on the length of postrevocation imprisonment under subsection (e)(3).  Both courts found this argument at odds with the plain meaning and structure of § 3583, concluding that the length of postrevocation imprisonment is determined by reference to the term of supervised release authorized by statute for the offense of conviction, and therefore is not limited by the supervised release term stemming from any prior violation resulting in revocation (i.e., the term authorized by subsection (h)). *See Cunningham*, 800 F.3d at 1292; *Williams*, 675 F.3d at 279.  "Indeed, subsections (b) and (h) establish a 'term of supervised release' for different purposes: subsection (b) defines the term of supervised release for the original offense, and subsection (h) defines the term of a supervised release tail [i.e., the term of supervised release following a term of postrevocation imprisonment]. Subsection (e)(3) clearly fixes the term of post-revocation imprisonment according to the former . . . ."  *Williams*, 675 F.3d at 279.

14

prior revocation); *United States v. Hampton*, 633 F.3d 334, 339 (5th Cir. 2011) (affirming two-years' imprisonment following second revocation and noting that, in the case of a class D felony conviction, "§ 3583(e)(3) imposes a two-year *per-revocation cap* on revocation imprisonment"); *United States v. Epstein*, 620 F.3d 76, 78 (2d Cir. 2010) (affirming a two-year prison sentence following a second revocation and noting that "18 U.S.C. § 3583 permits a court to impose a maximum sentence of two years for violations of conditions of supervised release for which *the underlying offense* was a class C or D felony" (emphasis added)); *United States v. Knight*, 580 F.3d 933, 936–37 (9th Cir. 2009) (finding that "[u]nder § 3583(e)(3) the maximum term of imprisonment that [the defendant] could receive upon [his third] revocation of . . . supervised release was two years" based on his original class C felony conviction); *United States v. Lewis*, 519 F.3d 822, 825 (8th Cir. 2008) ("Section 3583(e)(3) was in effect in October 2003 when [the defendant] committed the class C felony which produced his first period of supervised release, and its plain language permitted imposition of a prison sentence of up to 2 years for his second revocation . . . ."); *United States v. Hager*, 288 F.3d 136, 137 (4th Cir. 2002) (affirming two-year prison term following second revocation, "the maximum available under § 3583(e)(3) for an *underlying* Class D felony" (emphasis added)), *superseded on other grounds by statute*, PROTECT Act, Pub. L. No. 108-21, § 101(1), 117 Stat. 650, 651 (2003),

15

*as recognized in United States v. Ware*, 639 F. App'x 919, 920 (4th Cir. 2016).[5]

Broadening our analytical lens, we turn to related Supreme Court caselaw for guidance; it only reinforces our interpretation of the plain meaning of § 3583(e)(3). Specifically, in *Johnson v. United States*, the Court held that the penalty for violating the terms of supervised release "relate[s] to the original offense," 529 U.S. at 701. In doing so, the Court rejected the very position advanced by Mr. Collins here—that "revocation of supervised release 'imposes punishment for defendants' new offenses for violating the conditions of their supervised release.'" *Id.* at 699–700 (quoting *United States v. Page*, 131 F.3d 1173, 1176 (6th Cir. 1997)). In other words, the penalty for revocation is an enhancement of the punishment for the original offense, not a punishment for violating supervised release. The principle set forth in *Johnson* allows us to draw the inference that *any* reference to an "offense that resulted in the term of supervised release," 18 U.S.C. § 3583(e)(3), is meant to refer to the offense for which the defendant was first sentenced to supervised release.

---

[5]    A panel of the Sixth Circuit reached a similar conclusion in affirming a sentence following a second revocation of supervised release. The court rejected the defendant's argument that "his previous post-revocation sentence— seven months' imprisonment and twelve months' supervised release—set the outer boundaries for his second revocation proceedings." *United States v. Burrell*, 455 F. App'x 667, 668 (6th Cir. 2012). The Sixth Circuit stated that, "[b]ecause [the defendant's] *underlying conviction . . .* authorized a supervised release period of not less than two years and qualified as a Class D felony, the district court had the post-revocation discretion to sentence [him] to up to two years of imprisonment, 18 U.S.C. § 3583(e)(3)." *Id.* at 669 (emphasis added) (citations omitted).

16

We find further support in drawing this inference from the "serious constitutional questions" created by "construing revocation and reimprisonment as punishment for the violation of the conditions of supervised release." *Johnson*, 529 U.S. at 700. For instance, treating revocation as punishment for violating the conditions of supervised release may present serious concerns related to the Fifth Amendment prohibition against double jeopardy. *See id.* ("Where the acts of violation are criminal in their own right, they may be the basis for separate prosecution, which would raise an issue of double jeopardy if the revocation of supervised release were also punishment for the same offense."). Moreover, the violative conduct resulting in a revocation need not be criminal and need only be found by a judge under a preponderance of the evidence standard, not by a jury beyond a reasonable doubt. *See* 18 U.S.C. § 3583(e)(3). Revocation hearings, therefore, lack the same Sixth Amendment protections accorded a defendant who is subject to a criminal indictment. *See, e.g.*, *United States v. Granderson*, 511 U.S. 39, 48 (1994) ("[T]he Government prosecuted him for cocaine possession and afforded him the full constitutional protections of a criminal trial, rather than the limited protections of a revocation hearing."). However, "[t]reating postrevocation sanctions as part of the penalty for the initial offense . . . avoids these [constitutional] difficulties." *Johnson*, 529 U.S. at 700; *see, e.g.*, *United States v. Wyatt*, 102 F.3d 241, 244 (7th Cir. 1996) (rejecting double jeopardy challenge on the ground "that the revocation of [defendant's] term of supervised

17

release—which was imposed as part of the sentence for his marijuana conviction—constituted a punishment for his possession of firearms”); *accord United States v. Beals*, 87 F.3d 854, 859–60 (7th Cir. 1996), *overruled on other grounds by United States v. Withers*, 128 F.3d 1167 (7th Cir. 1997); *cf. United States v. Meeks*, 25 F.3d 1117, 1121 (2d Cir. 1994) (noting that revocation hearings for “supervised-release violations that do constitute criminal conduct” lack “certain fundamental constitutional protections”), *abrogated on other grounds by Johnson*, 529 U.S. at 711.  These constitutional difficulties are *not* overcome, much less avoided, if we construe the “offense that resulted in” language of § 3583(e)(3) as referring to the violative conduct resulting in revocation.  On the contrary, doing so places us squarely at odds with the Fifth and Sixth Amendments.  Our interpretation  of § 3583(e)(3)—that the “offense that resulted in” language is meant to refer to the offense for which the defendant was first sentenced to supervised release—avoids these same constitutional difficulties.

Interpreting § 3583(e)(3) within the entire statutory scheme of Title 18 further evinces an intention to limit the meaning of “offense” to crimes of conviction.  More specifically, it follows from § 3583(a) of Title 18 that the term “offense” in § 3583(e)(3) must refer to the original offense of conviction.  *See* 18 U.S.C. § 3583(a) (“The court, in imposing a sentence to a term of imprisonment for a felony or a misdemeanor, may include as a part of the sentence a

18

requirement that the defendant be placed on a term of supervised release after imprisonment . . . ."). Section 3583(a) authorizes supervised release "for a *felony* or a *misdemeanor*," that is, crimes. *Id.* (emphasis added); *see, e.g.*, *Felony*, BLACK'S LAW DICTIONARY, *supra* (defining "felony" as "[a] serious *crime* usually punishable by imprisonment for more than one year or by death" (emphasis added)); *Misdemeanor*, BLACK'S LAW DICTIONARY, *supra* (defining "misdemeanor" as "[a] *crime* that is less serious than a felony and is usually punishable by fine, penalty, forfeiture, or confinement (usually for a brief term) in a place other than prison (such as a county jail)" (emphasis added)). Because many supervised-release violations are noncriminal, *see, e.g.*, *Meeks*, 25 F.3d at 1122 (noting the frequency of revocation hearings for conduct that is "not a criminal offense"), and because a term of supervised release is only authorized for crimes (i.e., misdemeanors or felonies) under § 3583(a), it follows that a noncriminal violation of supervised release could not be an "offense" under § 3583(e)(3). In other words, noncriminal violations cannot themselves "result[ ] in the term of supervised release," 18 U.S.C. § 3583(e)(3).

Furthermore, as *Kellogg* indicated, other provisions of Title 18 treat the word "offense" as referring to expressly criminal activity. *See, e.g.*, 18 U.S.C. § 16 (defining "crime of violence" to mean an "offense" with certain characteristics); *id.* § 921(a)(33)(A) (defining "misdemeanor crime of domestic violence" to mean an "offense"). The titles of various provisions of the criminal

19

code confirm this interpretation. *See, e.g.*, *id.* § 19 (section titled "Petty offense

defined"); *id.* § 24 (section titled "Definitions relating to Federal health care

offense"); *id.* §§ 1341–51 (chapter titled "Mail Fraud and Other Fraud Offenses");

*id.* §§ 3271–72 (chapter titled "Extraterritorial Jurisdiction over Certain

Trafficking in Persons Offenses"). These provisions, along with § 3583(a)'s

limitation of supervised release terms to punishment for felonies or

misdemeanors, indicate that Congress intended to restrict the meaning of the term

"offense" throughout Title 18, and particularly in § 3583(e)(3), to crimes of

conviction.

In sum, based on the foregoing, we conclude that § 3583(e)(3) imposes a

statutory maximum prison term based on the *original* criminal offense of

conviction, *not* the violative conduct resulting in the revocation of supervised

release. Therefore, Mr. Collins's sentence should reflect the three-year maximum

for the Class B felony for which he was *first* sentenced.

**B**

In arguing against this outcome, Mr. Collins holds steadfastly to the view

that the "offense that resulted in" language of § 3583(e)(3) imposes a statutory

maximum based on the violative conduct of his first revocation, *not* his original

crime of conviction. He asserts that his view conforms to the statutory history of

subsections (e)(3) and (h) of § 3583, as well as subsection (e)'s cross-reference to

18 U.S.C. § 3553(a)(1).

20

As an initial matter, however, Mr. Collins contends that "the offense that resulted in the term of supervised release," for his purposes, must be referring to his first revocation, rather than his original conviction, because but for his first revocation, he would not be serving the term of supervised release that was revoked a second time. More specifically, he argues that under § 3583(e)(3), the phrase "resulted in" is referring to actual causation, which must be both "the necessary and sufficient cause of Mr. Collins's second term of supervised release." Aplee.'s Br. at 14–15.

In support of his causation argument, Mr. Collins points to a decision from the Supreme Court—*Burrage v. United States*, --- U.S. ----, 134 S. Ct. 881 (2014)—addressing the causation requirement imposed by 21 U.S.C. § 841(b)(1)(C).[6] In *Burrage*, the Court began with the observation that causation generally "consist[s] of two constituent parts: actual [i.e., but-for] cause and legal [i.e., proximate] cause." *Id.* at 887. Although holding that § 841(b)(1)(C)'s "results from" language "imposes . . . a requirement of actual causality," the Court declined to decide whether a proximate-cause requirement also flows from

---

[6]     The statutory provision at issue in *Burrage* specifically provides that

> In the case of a controlled substance in schedule I or II, . . . such person shall be sentenced to a term of imprisonment of not more than 20 years and *if death or serious bodily injury results from the use of such substance* shall be sentenced to a term of imprisonment of not less than twenty years or more than life . . . .

21 U.S.C. § 841(b)(1)(C) (emphasis added).

21

the statutory phrase. *Id.* at 887. We subsequently held that identical "results from" language in 21 U.S.C. § 841(b)(1)(E) did not embody a proximate-cause requirement. *See Burkholder*, 816 F.3d at 621 ("[Section] 841(b)(1)(E)'s provision that 'death . . . results from the use' of a Schedule III controlled substance requires only proof of but-for causation.").[7]

Mr. Collins contends that the district court's first revocation "resulted in" his second term of supervised release because but for that revocation the term of supervised release that Mr. Collins ultimately violated would not have existed. If we accept Mr. Collins's argument that § 3583(e)(3)'s use of the phrase "resulted in" refers to his first revocation as the independently *sufficient*, actual cause of his second term of supervised release, we would be forced to overlook *Johnson*. That is, as discussed *supra*, *Johnson* held that "postrevocation penalties relate to the original offense" and are not punishments for the violation of conditions of supervised release. 529 U.S. at 700–01. Thus, as a categorical rule, the but-for

---

[7] Distinct from "actual cause" or "but-for cause," "proximate cause" or "legal cause" means that the cause must be "legally sufficient to result in liability; an act or omission that is considered in law to result in a consequence, so that liability can be imposed on the actor." *Proximate Cause*, BLACK'S LAW DICTIONARY, *supra*. As we recited in *Burkholder*, "proximate cause principles inject a foreseeability element into [a] statute." 816 F.3d at 613 (alteration in original) (quoting *Babbitt v. Sweet Home Chapter of Cmtys. for a Greater Or.*, 515 U.S. 687, 713 (1995) (O'Connor, J., concurring)); *see also In re Antrobus*, 519 F.3d 1123, 1126–27 (10th Cir. 2008) (Tymkovich, J., concurring) (where "the harm must 'proximately' result from the crime," examining the record to discern whether the defendant's "crime was a reasonably foreseeable result of the illegal [conduct]"). Mr. Collins has made an argument only with respect to but-for causation, not proximate causation.

22

cause here—i.e., the offense that resulted in the term of supervised release—must be the offense of conviction. *Id.*

Moreover, it does not follow under *Johnson* that a but-for analysis will lead to only the first revocation. Mr. Collins's revocation was not independently sufficient to warrant his second term of supervised release. *See Burkholder*, 816 F.3d at 620 n.10 ("An event or condition is *sufficient* if its existence means that another event or condition will occur. An event or condition is *necessary* if, in its absence, another event or condition could not occur."); *see, e.g.*, *United States v. White*, 765 F.3d 1240, 1246 n.4 (10th Cir. 2014) ("The 'based on' clause is but one of two necessary but not sufficient conditions that must be satisfied before a district court is authorized to reduce a defendant's sentence under § 3582(c)(2) . . . ."). In other words, but for Mr. Collins's *original* conviction, he could not be sentenced to a term of imprisonment or supervised release upon his first or *any subsequent* revocation. *Burrage* does not artificially limit § 3583(e)(3) to the most recent event (i.e., Mr. Collins's first revocation) in the chain of actual causality. Imposing such a limitation here would contradict *Johnson*. Therefore, Mr. Collins's reliance on *Burrage* is misplaced.

Nor is Mr. Collins's position helped by § 3583(e)'s cross-reference to the sentencing factors set forth in § 3553(a)(1). As a preliminary matter, under § 3583(e), the court must "consider[ ] the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)" before imposing a

23

prison sentence following the revocation of supervised release. 18 U.S.C. § 3583(e). As relevant here, subsection (a)(1) of § 3553 requires the court to consider "the nature and circumstances of the offense," in the singular; subsection (a)(4)(B) requires the court to consider "the applicable guidelines or policy statements issued by the Sentencing Commission" "in the case of a violation of probation or supervised release." Mr. Collins contends that by cross-referencing § 3553(a)(1), Congress intended the term "offense" in subsection (e)(3)—which is also used in subsection (a)(1)—to refer to violations of supervised release.

Mr. Collins's reliance on this cross-reference is misguided for two reasons. First, as noted, *Kellogg* instructs that the term "offense," at least as it is used in Title 18, refers to criminal conduct. *See Kellogg*, 135 S. Ct. at 1976. Therefore, Congress's use of the term "offense" in subsection (e)(3) of § 3583 *and* subsection (a)(1) of § 3553 must refer to a crime for which the defendant was convicted, not violative conduct resulting in revocation. Second, consistent with principles of statutory interpretation, subsection (e)(3)'s cross-reference to § 3553(a)(1) cannot be interpreted to refer to the transgression leading to revocation when the cross-reference to § 3553(a)(4)(B) already does so.[8] *See*

---

[8] Subsection (a)(4) directs courts to consider the policy statements and sentencing ranges laid out in the United States Sentencing Guidelines Manual ("Guidelines" or "U.S.S.G.") in determining the appropriate sentence following a violation of supervised release conditions. 18 U.S.C. § 3553(a)(4)(B) ("The

(continued...)

24

court, in determining the particular sentence to be imposed, shall consider . . . [,] in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission . . . ."). Those policy statements in turn explicitly direct courts to consider the nature of the defendant's post-sentencing, post-incarceration, supervised release misconduct in determining the appropriate sanction upon revocation of supervised release. *See* U.S.S.G. Ch. 7, Pt. A. More specifically, these Guidelines policy statements "provide[] for three broad grades of violations," and these grades classify only supervised release misconduct. U.S.S.G. Ch. 7, Pt. A, introductory cmt. (3)(b); *see id.* § 7B1.1(a) (prescribing "three grades of . . . supervised release violations"). And the only variable other than such misconduct (with its associated grade) that affects the advisory sentencing ranges prescribed by the policy statements is the defendant's criminal history at the time of the original criminal sentencing—*viz.*, notably, the ranges are *not* affected by the offense of conviction itself. *See id.* § 7B1.4(a) (Revocation Table) ("The criminal history category is the category applicable at the time the defendant *originally was sentenced* to a term of supervision." (emphasis added)); *see also United States v. McBride*, 633 F.3d 1229, 1232 (10th Cir. 2011) ("These policy statements serve essentially the same role as the now-advisory sentencing guidelines issued by the Commission. They represent an expert assessment of appropriate sentencing practices, often informed by empirical data regarding actual sentencing practices.").

Moreover, the Guidelines clearly distinguish between the statutorily authorized maximum term of postrevocation imprisonment (i.e., the caps set by 18 U.S.C. § 3583(e)(3) based on the offense of conviction) and the advisory range of postrevocation imprisonment that is based on the nature of the supervised release violation resulting in revocation. *See* U.S.S.G. § 7B1.4(b)(1) ("Where the statutorily authorized maximum term of imprisonment that is imposable upon revocation is less than the minimum of the applicable range, the statutorily authorized maximum term shall be substituted for the applicable range[.]"); *see also id.* Ch. 7, Pt. A, introductory cmt. (3)(b) (noting that "the term of imprisonment that may be imposed upon revocation of supervised release is *limited by statute*" (emphasis added) (citing 18 U.S.C. § 3583(e)(3))); *cf. United States v. Jones*, 2017 WL 405615, at *2 (10th Cir. Jan. 31, 2017) ("A district court may vary from the sentencing range under the Guidelines after conducting an 'individualized assessment' of the facts and considering the relevant 18 U.S.C. § 3553(a) factors." (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007))); *id.* at

(continued...)

25

*TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001))); *see also Elwell v. Okla. ex rel. Bd. of Regents of Univ. of Okla.*, 693 F.3d 1303, 1307 (10th Cir. 2012) ("[W]e are always hesitant to assume Congress included pointless language in its statutory handiwork."); Scalia & Garner, *supra*, at 174 ("If possible, every word and every provision is to be given effect (*verba cum effectu sunt accipienda*). None should be ignored. None should needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence." (footnote omitted)). As § 3583(e) requires consideration of *both* subsection (a)(1) and subsection (a)(4)(B) of § 3553, the requirement can be plausibly interpreted to refer to the offense of conviction (i.e., subsection (a)(1)) and the transgression of revocation (i.e., subsection (a)(4)) *separately*.

---

[8](...continued)

*3 ("[A]lthough the sentence exceeded the Guidelines range [for his supervised release violation], it fell *within the statutorily permitted ranges* of 48 and 24 months for Mr. Jones's § 924(c) offense and § 922(g)(1) offense [i.e., his offenses of conviction], respectively." (emphasis added)). In other words, under the Guidelines policy statements referenced by 18 U.S.C. § 3553(a)(4)(B), the nature of a defendant's misconduct resulting in supervised release revocation is relevant solely to determining the grade of violation for purposes of calculating the appropriate postrevocation sentencing range under the Guidelines. This is a distinct inquiry from one related to the maximum term of postrevocation imprisonment authorized by statute; that is where the caps of § 3583(e)(3) are implicated.

Construing the cross reference to subsection (a)(1) in § 3583(e) to refer to the transgression leading to revocation, rather than the offense of conviction, would create a redundancy.

Finally, Mr. Collins argues that the statutory history of subsections (e)(3) and (h) of § 3583 suggest that only subsection (h) refers to the original offense of conviction for purposes of identifying the relevant limiting "term of supervised release." Mr Collins's argument is two-fold. First, he notes that prior to 1994 the statutory maximum in subsection (e)(3) was based on "the offense for which the person was *convicted*," 18 U.S.C. § 3583(e)(3) (1988) (emphasis added). Mr. Collins claims that by amending subsection (e)(3) to limit the statutory maximum prison sentence to "the offense that resulted in the term of supervised release," Congress intended for "offense" to refer to the violative conduct of the first revocation. *See* 18 U.S.C. § 3583(e)(3) (1994). Second, Mr. Collins notes that § 3583(h), which authorizes district courts to impose a new term of postrevocation supervised release, limits such term to that "authorized by statute for the offense that resulted in the *original* term of supervised release." 18 U.S.C. § 3583(h) (emphasis added).[9] Subsection (e)(3) does not include the term

_____

[9] Subsection (h) of § 3583 pertains to the district court's authority to sentence a defendant to a term of supervised release following revocation of a previous term. It provides the following:

> When a term of supervised release is revoked and the defendant is required to serve a term of imprisonment, the court may

(continued...)

27

"original." According to Mr. Collins, Congress's failure to amend subsection (e)(3) to include the term "original" when it added subsection (h) suggests that the "offense" referenced in subsection (e)(3) has a broader meaning than the "original" offense of conviction.[10]

---

[9](...continued)
> include a requirement that the defendant be placed on a term of supervised release after imprisonment. The length of such a term of supervised release shall not exceed the term of supervised release authorized by statute for the *offense that resulted in the original term of supervised release*, less any term of imprisonment that was imposed upon revocation of supervised release.

18 U.S.C. § 3583(h) (emphasis added).

[10] Mr. Collins also makes a closely related argument based on the "general principle of statutory construction that when 'Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 452 (2002) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)). Mr. Collins, however, ignores another equally compelling canon of interpretation that cuts against this argument—*viz.*, "[a] word or phrase is presumed to bear the same meaning throughout a text," Scalia & Garner, *supra*, at 170. Mr. Collins's interpretation would require that we assign a different meaning to the word "offense" as it appears in subsections (e)(3) and (h). "No canon of interpretation is absolute," Scalia & Garner, *supra*, at 59, rather "[t]hey are guides that 'need not be conclusive,'" *Chickasaw Nation v. United States*, 534 U.S. 84, 94 (2001) (citation omitted). Applying the principle Mr. Collins proposes would be at odds with the statutory scheme of Title 18, in which the term "offense" refers only to misdemeanors and felonies, and, as we have previously held, "no statute is an island unto itself." *Brune*, 767 F.3d at 1022; *see Kellogg*, 135 S. Ct. at 1976. Accordingly, guided by *Kellogg*, subsections (e)(3) and (h) should not be interpreted in a manner inconsistent with the plain language of the term "offense," when viewed in the context of Title 18. Nor does our interpretation, as Mr. Collins contends, render "the term 'original' in § 3583(h)
(continued...)

We dispatch with Mr. Collins's arguments first by zeroing in on Congress's use of the word "offense" in § 3583(e)(3). Congress could only have meant to limit the meaning of the term "offense" in subsection (e)(3) to the offense of conviction. Given that *Kellogg* held that the term "offense" in Title 18 refers to crimes (i.e., misdemeanors and felonies), *see* 135 S. Ct. at 1976—as opposed to violations of conditions of release—that term (i.e., "offense") must be accorded the same meaning throughout the statutory scheme. *See Villa*, 589 F.3d at 1343 (noting that the court must "consider not only the bare meaning of the [text] but also its placement and purpose in the statutory scheme" (alteration in original) (quoting *Bailey v. United States*, 516 U.S. 137, 145 (1995))).

---

[10](...continued)
. . . superfluous." Aplee.'s Br. at 27. On the contrary, as explained *infra* note 12, there is a common sense explanation for the inclusion of "original" in subsection (h) that undermines Mr. Collins's superfluity argument.

Moreover, the statutory history in fact contradicts the strained reading Mr. Collins attempts to impart to § 3583.[11]  Prior to 1994, subsection (e)(3) authorized a district court to:

> revoke a term of supervised release, and *require the person to serve in prison all or part of the term of supervised release without credit for time previously served* . . . except that a person whose term is revoked under this paragraph may not be required to serve more than 3 years in prison if the offense *for which the person was convicted* was a Class B felony, or more than 2 years in prison if the offense was a Class C or D felony.

21 U.S.C. § 3583(e)(3) (1988) (emphases added).  In 1994, Congress added the provision at issue here—i.e., "authorized by statute for the offense that resulted in such term of supervised release"—immediately before the words "without credit." In doing so, Congress "expanded the sentencing court's authority, allowing the court to impose a revocation sentence up to the statutory maximum even when the actual sentence of supervised release is shorter."  *United States v. Hunt*, 673 F.3d 1289, 1292 (10th Cir. 2012); *see also Johnson*, 529 U.S. at 705 (noting that prior to the 1994 amendments subsection (e)(3) did not allow a court to impose a

---

[11]    The government did not make this specific argument regarding the statutory history of § 3583, however, "we are not limited to the parties' positions on what a statute means, because we review a question of statutory construction *de novo*."  *WWC Holding Co., Inc. v. Sopkin*, 488 F.3d 1262, 1276 n.10 (10th Cir. 2007); *see also Hankins v. Lyght*, 441 F.3d 96, 104 (2d Cir. 2006) ("We are required to interpret federal statutes as they are written . . . and [therefore] are not bound by parties' [positions].");  *cf. Kamen v. Kemper Fin. Servs. Inc.*, 500 U.S. 90, 99 (1991) ("When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law.").

postrevocation prison term "equal to the maximum authorized length of a term of supervised release"); *Spencer*, 720 F.3d at 366 ("The [1994] amendments . . . extended imprisonment upon revocation up to the terms authorized by § 3583(b), i.e., those terms 'authorized by statute for the offense that resulted in such term of supervised release.'"); *Hampton*, 633 F.3d at 339 (describing the 1994 amendment as "removing the otherwise arguable limitation that a prison term imposed could never be longer than the term of the revoked supervised release" (quoting *United States v. Jackson*, 329 F.3d 406, 408 n.4 (5th Cir. 2003), *superseded on other grounds by statute*, PROTECT Act, Pub. L. No. 108-21, § 101(1), 117 Stat. 650, 651 (2003), *as recognized in Hampton*, 633 F.3d at 338)). In other words, the 1994 amendment was implemented to overcome a perceived limitation imposed by the *first* clause of subsection (e)(3): it directed courts to impose a post-revocation term of imprisonment based on the term of supervised release authorized by statute for the *offense of conviction*, rather than the term of supervised release set by the original sentencing court.

Mr. Collins's interpretation of the amendment is implausible in light of this background. He contends that the very same provision—i.e., "the offense that resulted in the term of supervised release"—had the exact opposite effect when it was also added to the limiting clause at the end of subsection (e)(3) in place of the "offense for which the person was convicted." "A word or phrase is presumed to bear the same meaning throughout a text," Scalia & Garner, *supra*, at 170, and

31

we see no reason to depart from this fundamental canon of statutory interpretation here.

Nor are we persuaded that Congress's inclusion of the term "original" in subsection (h) demands a different result. We are aware of no canon of statutory interpretation that presumes Congress must amend one provision of a statute in order to retain its plain meaning after adding a new provision to that statute that more precisely expresses the meaning of the same statutory language. On the contrary, when preamendment language—be it in a statute, jury instructions, a contract, or any other legal instrument—was sufficient to support a construction, but was subsequently amended to more precisely express the same meaning, the amendment does not itself abrogate the prior construction. This is especially true of Congressional enactments. *See Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 117 (1980) ("[T]he views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one." (quoting *United States v. Price*, 361 U.S. 304, 313 (1960))); *In re Roser*, 613 F.3d 1240, 1247 (10th Cir. 2010) ("[A] later legislature cannot change the meaning of a statute; it can only amend the statute."); *Chelette v. Harris*, 229 F.3d 684, 686 (8th Cir. 2000) ("When Congress repeatedly amends only some portions of a statute, we infer that it intends no change to the law of unamended portions."); *Am. Cas. Co. of Reading v. Nordic Leasing, Inc.*, 42 F.3d 725, 732 n.7 (2d Cir. 1994) ("Where sections of a statute have been amended but certain provisions have been left

32

unchanged, we must generally assume that the legislature intended to leave the untouched provisions' original meaning intact."). Therefore, Congress's decision to include a clarifying descriptor in subsection (h) does not require us to reconsider the meaning of subsection (e)(3). As noted, *Kellogg* requires the conclusion that the "offense that resulted in" language of subsection (e)(3) must refer to the original crime of conviction, and the addition of subsection (h) does not alter our calculus in that regard.[12]

In sum, we are convinced that the plain language and statutory context of the "offense that resulted in" language in § 3583(e)(3) reveals a clear congressional choice to limit the term of imprisonment, following a revocation of supervised release, based on the original crime of conviction.

---

[12] We also note a much more plausible explanation for Congress's inclusion of the term "original" in subsection (h). As a general matter, subsection (e)(3) dictates the term of imprisonment that can be imposed following revocation, and subsection (h) dictates the term of supervised release that can be imposed following revocation. Subsection (h) was added to § 3583 in 1994. Prior to this time, courts could not impose an additional term of supervised release after revoking a defendant's original term of supervision. Given the purpose of subsection (h)—i.e., to allow for *new* terms of supervised release in addition to the *original* term—it is not surprising that Congress chose to include the modifier "original" when describing the term of supervised release that courts should look to when determining the maximum *new* term of supervision that may be imposed. Mr. Collins would have us hold that, by including this clarifying term in subsection (h), Congress implicitly intended to create a sweeping change to subsection (e)(3). This we cannot do. "Congress . . . does not alter the fundamental details of a [statute] in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001); *cf. Kellogg*, 135 S. Ct. at 1977 ("Fundamental changes in the scope of a statute are not typically accomplished with so subtle a move.").

## C

We thus hold that the statutory-maximum prison sentence under § 3583(e)(3) for a defendant who, like Mr. Collins, has violated a second or subsequent term of supervised release is based on the severity of the *first* offense for which he was sentenced to supervised release (i.e., the offense of conviction). Therefore, Mr. Collins must be resentenced based on the three-year statutory maximum for his offense of conviction (i.e., a class B felony), rather than the subsequent violation of the conditions of his release that resulted in revocation.

## III

For the foregoing reasons, we **REVERSE** the district court's sentencing order and **REMAND** the case, instructing the court to **VACATE** its revocation judgment and resentence Mr. Collins consistent with this opinion.[13]

---

[13]    According to Federal Bureau of Prisons records, Mr. Collins was released from prison on February 5, 2016. At that time, he still had to complete a two-year term of supervised release. It is important to highlight that, as we read controlling precedent, our instruction to the district court to resentence Mr. Collins does not present any double-jeopardy concerns. The Double Jeopardy Clause prohibits "sentence adjustments that upset a defendant's legitimate 'expectation of finality in his sentence.'" *Warnick v. Booher*, 425 F.3d 842, 847 (10th Cir. 2005) (quoting *United States v. DiFrancesco*, 449 U.S. 117, 136 (1980)). But this rule is subject to at least two caveats: (1) "[T]here can be no reasonable expectation of finality when a statute gives the government a right to appeal—at least not until expiration of the time for appeal to be taken," *United States v. Earley*, 816 F.2d 1428, 1433 (10th Cir. 1987) (interpreting *DiFrancesco*); *accord United States v. Smith*, 929 F.2d 1453, 1457 (10th Cir. 1991) ("[A] criminal defendant whose sentence is appealable by the government under a statutory provision allowing for such an appeal, remains under the jurisdiction of the courts and can acquire no legitimate expectation in the finality

(continued...)

---

[13](...continued)
of his original sentence, at least not until the time for appeal has expired."); and (2) "A defendant cannot acquire a legitimate expectation of finality in a sentence which is illegal, because such a sentence remains subject to modification." *United States v. Rourke*, 984 F.2d 1063, 1066 (10th Cir. 1992). Taken together, these provisions allow us to conclude, with the Ninth Circuit, that "[t]here can be no expectation of finality in sentences that are illegal and that were under challenge by the government." *United States v. Arrellano-Rios*, 799 F.2d 520, 524 (9th Cir. 1986). We have apparently not addressed a situation like this, where a district court is directed to resentence an individual already released from the imprisonment portion of his sentence. Nonetheless, we are confident in light of controlling precedent that Mr. Collins has not acquired a legitimate expectation of finality in his sentence. After all, he still must serve out the supervised release portion of his sentence. Therefore we deem this disposition appropriate.