KELLY, Circuit Judge,
concurring in part and dissenting in part.
I concur that the government met its burden of showing by a preponderance of the evidence that Mr. Haymond knowingly possessed child pornography. I disagree with the court that some of the district court’s factual findings supporting this conclusion are clearly erroneous. I also dissent from the court’s holding that 18 U.S.C. § 3583(k) is unconstitutional.
Our review of factual findings is “significantly deferential.” Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal, 508 U.S. 602, 623, 113 S.Ct. 2264, 124 L.Ed.2d 539 (1993).
If the district court’s account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are *1169 two permissible views of the evidence, the factfinder’s choice between them cannot be clearly erroneous.
Anderson v. City of Bessemer City, 470 U.S. 564, 573-74, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).
When looking at the record as a whole, the district court’s view of the evidence was permissible. For instance, this court holds that it is clearly erroneous that “on the phone” means “saved, downloaded, or otherwise accessible on the phone in some application for viewing at the user’s discretion.” Ct. Op. at 1158 (brackets, emphasis, and citation omitted). But the district court’s interpretation is supported by Mr. Penrod’s testimony that the Gallery3D application searches the phone for existing images — and that, unlike with images stored in the browser cache, there was no alternative explanation (i.e., other than that the images were already on the phone) for how the images were stored in the cache. 2 R. 167-68. Mr. Penrod’s later clarification of the different ways the images could have been saved or downloaded to the phone — via text message, social media, email, etc. — does not make the statement any less true, or any less supported by the evidence.
Likewise, the court holds that it is clearly erroneous that “Haymond knowingly took some volitional act related to the Gallery Images that resulted in the images being on his phone in a manner consistent with knowing possession” and that “the path demonstrates that Haymond took pri- or volitional actions with regard to the Gallery Images.” Ct. Op. at 1158 (brackets, emphasis, and citation omitted). These district court findings are ostensibly error based on Mr. Penrod’s clarification that, because there was no metadata associated with the images, one could not say with certainty how the images came to be on the phone. Id. at 1158-59; see 1 R. 186. But these findings are not clearly erroneous merely because the technological path could not clarify with 100% accuracy how the images got on the phone. The district court reasonably concluded that the most likely explanation was that Mr. Haymond did something to allow them to be there. Indeed, the factual findings that this court agrees were proper seem to support this conclusion: Mr. Haymond had exclusive use of his phone, the images were on the phone, the images were accessible to Mr. Haymond, and the images were similar to those he was previously convicted of illegally possessing. Viewed in light of the surrounding evidence, simply because there are two views of Mr. Penrod’s testimony does not mean that the district court clearly erred in choosing one over the other.
As for the constitutionality of 18 U.S.C. § 3583(k), I disagree with the court’s conclusion that United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), applies to revocation proceedings. Ct. Op. at 1162-63. Mr. Haymond was tried and found guilty beyond a reasonable doubt of the original offense, and those jury-found facts supported the sentence imposed. Booker applied to that sentence. Mr. Haymond also was instructed that supervised release would be part of that sentence and that there were certain restrictions he had to abide by lest his supervised release be revoked.
As the Supreme Court has explained, revocation of supervised release “need not be criminal and need only be found by a judge under a preponderance of the evidence standard, not by a jury beyond a reasonable doubt.” Johnson v. United States, 529 U.S. 694, 700, 120 S.Ct. 1795, 146 L.Ed.2d 727 (2000). That the full panoply of rights were guaranteed to Mr. Hay-mond during his initial criminal proceeding does not mean that they attach once more during a revocation proceeding. That pro *1170 ceeding is, after all, “not a stage of a criminal prosecution.” Gagnon v. Scarpelli, 411 U.S. 778, 782, 93 S.Ct. 1756, 86 L.Ed.2d 656 (1973).
Up to this point, the court and I agree. We disagree that § 3683(k) becomes unconstitutional because it “increases the mandatory minimum penalty to whieh a defendant may be subjected, and does so based on facts not found by the jury.” Ct. Op. at 1162. Were the court correct, the problem.it identifies seems like it would be true of all revocation proceedings: if a defendant is sentenced to any term of supervised release, the fact that the release can then be revoked and the defendant be sent back to prison for an additional term means that “the penalty to which a defendant may be subjected” has been increased based on facts not found by a jury. Id. (emphasis added).
In other words, unless either (a) all revocation proceedings must empanel juries for fact-finding (which the Supreme Court, with good reason, has told us is not the case) or (b) the revocation proceeding is treated as a new criminal prosecution (which the Supreme Court also has told us is not the case), it is hard to understand why under current precedent Booker would apply but Apprendi and Alleyne Would not. While postrevocation penalties might be considered attributable to the original conviction, the revocation proceeding is neither part of that criminal prosecution nor is it a new criminal prosecution. See Johnson, 529 U.S. at 700, 120 S.Ct. 1795.
The Supreme Court has also answered the court’s second objection to § 3583(k)— that it “circumvents the protections of the Fifth and Sixth Amendments by expressly imposing an increased punishment for specific conduct.” Ct. Op. at 1165. The court cites Johnson for the proposition that revocation of supervised release is not “punishment for the violation of the conditions of supervised release,” id. (citing 529 U.S. at 699-700, 120 S.Ct. 1795), but then fails to take the Supreme Court at its word. This is apparently because Congress has delineated different terms of revocation for different breaches of supervised release. Id. at 1165 (comparing § 3583(k), which ties its requirement of at least five years’ revocation to, the commission of enumerate^ sex offenses, with § 3583(e)(3), which sets limits on the resulting terms of reimprisonment based on the “offense that resulted” in the underlying supervised release). The court takes issue with the fact that had Mr. Haymond violated the conditions of his supervised release in a manner other than by committing one of the crimes referenced in § 3583(k), then he would have been subject to invocation under § 3583(e)(3) and’ faced' a shorter term of reimprisonment. Ct. Op. at 1165. Therefore, the court concludes, subsection (k) is actually punishment for the new crime.
But the distinction cannot be (and I do not take the court to contend) that revocation based on the commission of a new crime is punishment for the new crime, because § 3583(d) explicitly requires the sentencing court to include “as an explicit condition of supervised release, that the deféndant not commit another ... crime during the term of supervision.” If a defendant on supervised release did so, then his release could be revoked under § 3583(e)(3). The court rightly does not contend that this would be a new “punishment.”
Instead, the distinction, apparently, is that the terms of revocation differ based on what kind of new crime the defendant committed. But I see no reason why Congress cannot , make that distinction. As the Sentencing Guidelines explain, under the “breach of trust” theory applicable to the revocation of supervised release, “the nature of the conduct leading to the revoca *1171 tion [can] be considered in measuring the extent of the breach of trust.” U.S. Sentencing Guidelines Manual § 7A3(b) (2016). In my view, Congress can determine that the commission of certain crimes constitutes a more serious breach of trust warranting a longer term of revocation. Doing so does not thereby make the revocation proceeding a new criminal prosecution, nor would it be inconsistent with our holding in United States v. Collins, 859 F.3d 1207, 1210 (10th Cir. 2017), to conclude that the language in § 3583(e)(3)— “the offense that resulted in the term of supervised release” — refers to the original crime. Cf. Ct. Op. at 1166.
Ultimately, we should not jump ahead of the Supreme Court when it has already spoken on this, issue. Any tension between the supervised release scheme approved in Johnson and the rationale of the Apprendi/Booker line of cases is for the Supreme Court itself to resolve. See Rodriguez de Quijas v. Shearson/Am. Express, Inc., 490 U.S. 477, 484 (1989). Therefore, I would affirm the revocation of supervised release and the resulting sentence.