**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 31, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

No. 16-5156

ANDRE RALPH HAYMOND,

Defendant-Appellant.

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**
**(D.C. No. 4:08-CR-00201-TCK-1)**

William D. Lunn, Tulsa, Oklahoma, appearing for Appellant.

Leena Alam, Assistant United States Attorney (Danny C. Williams, Sr., United States Attorney, and Andrew J. Hofland, Assistant United States Attorney, on the brief), Office of the United States Attorney, Tulsa, Oklahoma, appearing for Appellee.

Before **KELLY, BRISCOE**, and **McHUGH**, Circuit Judges.

**BRISCOE**, Circuit Judge.

The district court revoked Andre Ralph Haymond's supervised release based in part on a finding that Haymond knowingly possessed thirteen images of child pornography. The district court imposed the mandatory minimum sentence required by

18 U.S.C. § 3583(k). Haymond appeals and argues that the evidence was insufficient to support a finding by a preponderance of the evidence that he possessed child pornography, and that 18 U.S.C. § 3583(k) is unconstitutional because it violates his right to due process.

We conclude that the evidence was sufficient to support the district court's finding that Haymond violated the conditions of his supervised release, but we agree that 18 U.S.C. § 3583(k) is unconstitutional because it strips the sentencing judge of discretion to impose punishment within the statutorily prescribed range, and it imposes heightened punishment on sex offenders based, not on their original crimes of conviction, but on new conduct for which they have not been convicted by a jury beyond a reasonable doubt. Thus, we affirm the district court's revocation of Haymond's supervised release, but we vacate Haymond's sentence and remand for resentencing.

## I

On January 21, 2010, Haymond was convicted by a jury of one count of possession and attempted possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2). Aplt. App. vol. I, at 29. For this offense, Haymond was sentenced to thirty-eight months of imprisonment, to be followed by ten years of supervised release. Id. at 30–31. Haymond began serving his supervised release on April 24, 2013. Id. at 144.

On October 22, 2015, at 6:00 am, probation officers conducted a surprise search of Haymond's apartment. Id. at 145. The officers seized a password-protected Samsung

2

cellular Android phone belonging to Haymond, a personal computer belonging to Haymond, a personal computer belonging to Haymond's roommate, and two other computers found in the kitchen area. Id.

A probation officer conducted a forensic examination of Haymond's phone using a Cellebrite device, which extracts the flash memory of the phone for examination. Id. This examination revealed web history for only October 21, 2015, indicating that all prior history had been deleted. Id. at 146. The web history for October 21 contained numerous websites with titles indicative of sexually explicit material. Id. (listing websites). The forensic examination of Haymond's phone also revealed fifty-nine images that the FBI's Internet Crime Task Force identified as child pornography. Id. at 147.

Based on these findings, Haymond's probation officer alleged that Haymond had committed five violations of his supervised release: (1) possession of fifty-nine images of child pornography, in violation of the mandatory condition that Haymond not commit another federal, state, or local crime; (2) failure to disclose to the probation office all internet devices he possessed, in violation of a special computer restriction; (3) possession of numerous sexually explicit images on his phone, in violation of a special condition that he not view or possess pornography; (4) failure to install and pay for computer monitoring software, in violation of a special monitoring condition; and (5) failure to attend sex offender treatment on fifteen occasions, in violation of a special condition that he participate in treatment. Id. at 142.

The district court found, by a preponderance of the evidence, that Haymond had committed all five violations, but, with respect to the first alleged violation, possession of child pornography, the court concluded that Haymond had possessed only the thirteen images located in his phone's gallery cache, not the other forty-six images located in other portions of the phone's cache. Id. Because the possession of child pornography triggered a mandatory minimum sentence of five years' reincarceration, under 18 U.S.C. § 3583(k), the judge sentenced Haymond to five years' reincarceration, to be followed by a five-year term of supervised release. Id. at 191–92, Aplt. App. vol. III, at 152.

Haymond appeals and challenges only the first of these alleged violations. He argues: (1) that the presence of images in his phone cache was insufficient to show by a preponderance of the evidence that he knowingly possessed child pornography, and (2) that 18 U.S.C. § 3583(k) is unconstitutional because it deprives him of due process. Aplt. Br. at 2–4.

## II

"We review the district court's decision to revoke supervised release for abuse of discretion." United States v. Jones, 818 F.3d 1091, 1097 (10th Cir. 2016) (quoting United States v. LeCompte, 800 F.3d 1209, 1215 (10th Cir. 2015)). "A district court abuses its discretion when it relies on an incorrect conclusion of law or a clearly erroneous finding of fact." United States v. Battle, 706 F.3d 1313, 1317 (10th Cir. 2013). "A finding of fact is clearly erroneous if it is without factual support in the record or if, after reviewing all of the evidence, we are left with the definite and firm conviction that a mistake has

4

been made." United States v. Hernandez, 847 F.3d 1257, 1263 (10th Cir. 2017) (quoting In re Vaughn, 765 F.3d 1174, 1180 (10th Cir. 2014)).

Here, the district court abused its discretion by relying on a clearly erroneous finding of fact that "Haymond knowingly took some volitional act related to the Gallery Images that resulted in the images being on his phone in a manner consistent with knowing possession." Aplt. App. vol. I, at 164. Nonetheless, the remaining evidence in the record was sufficient to support a finding, by a preponderance of the evidence, that Haymond knowingly possessed the thirteen images of child pornography located in the Gallery cache of his smart phone.

The only expert testimony regarding the Gallery cache function on Haymond's smart phone came from David Penrod, who testified as an expert for Haymond; the prosecution did not provide any expert testimony. Id. at 166. With respect to all fifty-nine images, Penrod testified that the presence of the images in the phone's cache did not indicate whether or not the user had viewed the images or knew of their existence. Aplt. App. vol. II, at 128 ("With Internet cache databases, all that information is automatically downloaded in the background without the user's knowledge."); id. at 163–64 (A user may not know images in the Gallery cache exist "because the Gallery3D cache database contains images from all over the phone, not just from one particular folder on the phone."); id. at 140 ("[T]he fact [the apk file is] still sitting there in the download folder is very strong evidence that the user had no knowledge that this file was there."). Further, Penrod testified that all the images were thumbnails, indicating that the

5

user had not clicked on them because, if the user had viewed an enlarged image, that enlarged image would also appear in the cache. Id. at 130–32. The images did not include any metadata, so it was impossible to determine when the images came to be on the phone, except to say "that they arrived in the cache file of the phone at some point prior to seizure." Aplt. App. vol. I, at 149; Aplt. App. vol. II, at 135–36.

Penrod also testified that Android smart phone users can easily access their photo gallery through the Gallery3D application and can look through the photos in that application. Aplt. App. vol. II, at 158. He was then asked this question: "So a cached file from the Gallery indicates that, just the same way as for the Samsung browser, that at one point an image that corresponded to that cached file was present in that application?" Id. at 159. He responded, "Correct." Id.

Further, Penrod's testimony makes clear that images can appear in the Gallery3D application without a user taking any volitional action to place them there. Penrod testified that "the gallery cache functions in the same way that the browser cache does: it's a cached database and it contains thumbnails." Id. at 163. He stated that the Gallery3D application searches the phone for all images on the phone. Id. ("[I]t's going to go out and look for actual images throughout the phone."). Therefore, he testified that a user might not know about all the images in the Gallery cache. Id. at 163–64.

After recounting this testimony, the district court concluded, "[b]ased on this testimony and other circumstantial evidence," that it was "more likely than not that Haymond knowingly possessed the Gallery Images at a point in time prior to search of

6

the phone." Aplt. App. vol. I, at 163. Specifically, the court made the following findings:

- "Haymond had nearly exclusive use and possession of his password-protected phone," id. at 163–64;
- Only Haymond "possessed the phone at relevant times," id. at 164;
- "[O]nly those images actually 'on the phone' (and not images merely accessed or viewed on the phone using a browser application) would have a "gallery 3d" path when found in the cache," id. (quoting Aplt. App. vol. II, at 168);
- "[O]n the phone" means "*saved, downloaded, or otherwise* accessible on the phone in some application for viewing at the user's discretion," id. (emphasis added);
- "*Haymond knowingly took some volitional act related to the Gallery Images that resulted in the images being on his phone in a manner consistent with knowing possession,*" id. (emphasis added);
- "[T]hese 13 images previously resided in an accessible area of Haymond's phone and were under his control," id.;
- "*[T]he path demonstrates that Haymond took prior volitional actions with regard to the Gallery Images,*" id. (emphasis added);
- Unlike the Browser Images or the APK Images, "the 13 Gallery Images depict sexual acts between young boys or between boys and adult males," which is "consistent with images forming the basis of Haymond's original conviction," id. at 165.

The portions in italics are clearly erroneous because the district court expressly relied on Penrod's testimony as support, but these findings are actually contradicted by Penrod's testimony. We agree with the district court that "[s]aving, downloading, or otherwise placing the image in an application on the phone is a similar volitional act" to the "volitional downloads from Limewire" that supported Haymond's original conviction. See id. at 164. But Penrod's testimony supports only a finding that the images were at some point accessible on Haymond's phone, not that Haymond necessarily saved, downloaded, or otherwise placed them there. Penrod's testimony cannot be construed to indicate either that Haymond knew the images were in the Gallery3D application, or that

7

he took any volitional action to cause them to be there.

Even if this was not clear from Penrod's testimony at the hearing, Haymond submitted a letter from Penrod clarifying that, "[w]ithout additional information about them, the most one can say about the photographs linked to thumbnail images in the Gallery3D cache database is that they were on the phone at one time." Id. at 186. Penrod gave five examples of ways the images might have arrived on Haymond's phone without Haymond's knowledge or volitional acts, including as zip file attachments to emails, as text messages sent without Haymond's consent, as attachments to messages on social media sites, as part of a mass file transfer from a computer, or downloaded from the internet as part of a set. Id. According to Penrod, "[o]pening the transferred archives, folders, or sets would have launched the phone's Gallery3D service. The service would have automatically scanned the contents of the new directories, extracted thumbnail images from all the photos within them, and stored the thumbnails in the Gallery3D cache database." Id. Penrod stated unequivocally:

> The mere fact that these thumbnail images are in the Gallery3D cache database does not mean, however, that Mr. Haymond had viewed their full size counterparts or even knew of their existence. The thumbnails in the cache database also do not mean that Mr. Haymond caused the full size versions to be transferred to his phone.

Id. The district court should not have concluded the opposite from Penrod's testimony. The district court's finding that "the path demonstrates that Haymond took prior volitional actions with regard to the Gallery Images," id. at 168, was not supported by any evidence in the record, so it was clearly erroneous.

8

When this incorrect finding is excluded, we are left with the following:

- Haymond had nearly exclusive use and possession of his password-protected phone and only Haymond possessed the phone at relevant times;
- At some point, thirteen images of child pornography were accessible somewhere on Haymond's phone;
- The images depict sexual acts between young boys or between boys and adult males, which is consistent with images forming the basis of Haymond's original conviction.

This is a close case, even under a preponderance of the evidence standard, but we conclude this evidence is sufficient to support a conclusion that Haymond knowingly possessed the thirteen images located in the Gallery cache of his smart phone.

It is undisputed that the images were once accessible on Haymond's smart phone; the only debate is whether he knew the images were there. We must then decide whether it is "more likely than not" that Haymond knew about the images. From Penrod's testimony, the images could have come to be in the phone's Gallery3D application via an automatic process related to, for example, a zip file or mass file transfer, but Penrod also could not rule out the possibility that Haymond saved the images to the Gallery3D application on his phone. Although it is *possible* that the images of child pornography were downloaded into Haymond's smart phone's Gallery cache through an automatic process of which he was unaware, we conclude it is *more likely than not* that Haymond did in fact download and save the images. Such a volitional act would constitute knowing possession. Thus, the evidence in the record is sufficient to support a finding, by a preponderance of the evidence, that Haymond knowingly possessed child pornography, in violation of the conditions of his supervised release.

9

## III

Because we conclude that the evidence was sufficient to support Haymond's violation for possession of child pornography, we are left with the constitutional question presented. On that issue, we conclude that § 3583(k) is unconstitutional because it changes the mandatory sentencing range to which a defendant may be subjected, based on facts found by a judge, not by a jury, and because it punishes defendants for subsequent conduct rather than for the original crime of conviction.

"We review the constitutionality of a statute de novo." United States v. Berres, 777 F.3d 1083, 1087 (10th Cir. 2015). But we may "invalidate a congressional enactment only upon a plain showing that Congress has exceeded its constitutional bounds." United States v. Morrison, 529 U.S. 598, 607 (2000); United States v. White, 782 F.3d 1118, 1123 (10th Cir. 2015) (quoting Morrison). It is plain here on the face of the statute that Congress has done just that.

Imposition of supervised release is governed by 18 U.S.C. § 3583. The court, when imposing a sentence following a felony or misdemeanor conviction, may include a term of supervised release "as a part of the sentence." 18 U.S.C. § 3583(a). The statute ties the applicable length of supervised release to the crime of conviction; it provides for up to five years of supervised release for a Class A or Class B felony, up to three years for a Class C or Class D felony, and up to one year for a Class E felony, or for a misdemeanor (other than a petty offense). Id. § 3583(b). For certain specific crimes, including Haymond's original crime of conviction, a separate subsection authorizes a

10

term of supervised release of at least five years and up to life.  Id. § 3583(k).  In all cases, the term of supervised release authorized is dependent on the severity of the defendant's original crime of conviction.

The court may impose conditions on the defendant during the term of supervised release, and must impose certain mandatory conditions, including the condition "that the defendant not commit another Federal, State, or local crime during the term of supervision."  Id. § 3583(d).

The court may modify or revoke the term or conditions of supervised release.  Id. § 3583(e).  Most revocations are governed by § 3583(e)(3), which provides that the court, if it "finds by a preponderance of the evidence that the defendant violated a condition of supervised release," may

> revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on post-release supervision . . . except that a defendant whose term is revoked under this paragraph may not be required to serve on any such revocation more than 5 years in prison if the offense that resulted in the term of supervised release is a class A felony, more than 3 years in prison if such offense is a class B felony, more than 2 years in prison if such offense is a class C or D felony, or more than one year in any other case.

Id. § 3583(e)(3).  Again, the maximum terms of reimprisonment authorized by the statute for violations of the conditions of supervised release are limited based on the severity of the defendant's original crime of conviction, not the conduct that resulted in the revocation.  Id.; United States v. Collins, 859 F.3d 1207, 1218 (10th Cir. 2017).

11

The United States Sentencing Commission must promulgate and distribute "guidelines or general policy statements regarding . . . the provisions for modification of the term or conditions of supervised release and revocation of supervised release set forth in section 3583(e) of title 18." 28 U.S.C. § 994(a)(3). Accordingly, the Commission has issued policy statements regarding the revocation of supervised release. According to the Sentencing Guidelines Manual, "at revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator." U.S. Sentencing Guidelines Manual Ch. 7, Pt. A, introductory cmt. (3)(b) (U.S. Sentencing Comm's 2016). "The revocation policy statements categorize violations of probation and supervised release in three broad classifications ranging from serious new felonious criminal conduct to less serious criminal conduct and technical violations." Id. Ch. 7, Pt. A, introductory cmt. 4; id. § 7B1.1(a). "The grade of the violation, together with the violator's criminal history category calculated at the time of the initial sentencing, fix the applicable sentencing range." Id. Ch. 7 Pt. A, introductory cmt. 4; id. §§ 7B1.3; 7B1.4. The recommended terms of reimprisonment following revocation of supervised release range from three months to sixty-three months. Id. § 7B1.4(a). In all cases, the recommended term of reimprisonment must be within the statutorily authorized range. Id. § 7B1.4(b).

The court may impose an additional term of supervised release to follow the term of reimprisonment. Id. § 3583(h). The length of a subsequent term of supervised release

"shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release." Id. Thus, with regard to any subsequent terms of supervised release, the maximum length of those terms is also based upon the original crime of conviction, not the new conduct.

A special provision, the one challenged here, then provides:

> Notwithstanding subsection (b), the authorized term of supervised release for any offense under section 1201 involving a minor victim, and for any offense under section 1591, 1594(c), 2241, 2242, 2243, 2244, 2245, 2250, 2251, 2251A, 2252, 2252A, 2260, 2421, 2422, 2423, or 2425, is any term of years not less than 5, or life. If a defendant required to register under the Sex Offender Registration and Notification Act commits any criminal offense under chapter 109A, 110, or 117, or section 1201 or 1591, for which imprisonment for a term longer than 1 year can be imposed, the court shall revoke the term of supervised release and require the defendant to serve a term of imprisonment under subsection (e)(3) without regard to the exception contained therein. Such term shall be not less than 5 years.

Id. § 3583(k).

Haymond's original crime of conviction, one count of possession and attempted possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B), is a Class C felony. 18 U.S.C. § 3359(a)(3). The statutory penalty for violation of 18 U.S.C. § 2252(a)(4)(B) is a fine or imprisonment up to ten years, or both. Id. § 2252(b)(2). The supervised release statute also requires a mandatory term of supervised release of five years to life. Id. § 3583(k). If a court later finds the defendant has violated the conditions of that supervised release it might revoke the term of supervised release and impose a term of reimprisonment. Id. § 3583(e)(3), (k). Most violations fall under § 3583(e)(3),

13

which, based on Haymond's original conviction for a Class C felony, authorizes a subsequent term of imprisonment of no more than two years. Id. A violation that is the commission of "any criminal offense under chapter 109A, 110, or 117, or section 1201 or 1591, for which imprisonment for a term longer than 1 year can be imposed," however, is governed instead by § 3583(k), which, when read with § 3583(e)(3), requires a mandatory term of reimprisonment of at least five years and up to life. Id. § 3583(e)(3), (k).

If not for the mandatory minimum sentence required by § 3583(k), the sentence Haymond received following revocation of his supervised release would have been significantly lower—two years at most. Id. § 3583(e)(3). The sentencing judge stated on the record that, "were there not this statutory minimum, the court would have looked at this as a grade B violation and probably would have sentenced in the range of two years or less." Aplt. App. vol. III, at 152.

We conclude that 18 U.S.C. § 3583(k) violates the Fifth and Sixth Amendments because (1) it strips the sentencing judge of discretion to impose punishment within the statutorily prescribed range, and (2) it imposes heightened punishment on sex offenders expressly based, not on their original crimes of conviction, but on new conduct for which they have not been convicted by a jury beyond a reasonable doubt and for which they may be separately charged, convicted, and punished.

First, 18 U.S.C. § 3583(k) is unconstitutional because it increases the mandatory minimum penalty to which a defendant may be subjected, and does so based on facts not found by the jury. According to the Supreme Court's decisions in Apprendi v. New

14

Jersey, 530 U.S. 466 (2000), and Alleyne v. United States, __ U.S. __, 133 S. Ct. 2151 (2013), "[a]ny fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt." Alleyne, 133 S. Ct. at 2155. This includes any fact that increases either the mandatory minimum or the statutory maximum. Id.

But "[e]stablishing what punishment is available by law and setting a specific punishment within the bounds that the law has prescribed are two different things." Id. at 2163 (quoting Apprendi, 530 U.S. at 519). "We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range." United States v. Booker, 543 U.S. 220, 233 (2005). "[W]hen a trial judge exercises his [or her] discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant." Id. In this context, discretion is key; the Supreme Court held in United States v. Booker, 543 U.S. 220 (2005), that the Sentencing Guidelines must be advisory, not mandatory, in order to avoid violating the Sixth Amendment right to a trial by jury. Id. at 245–46.

In other words, the facts which determine the mandatory sentencing range must be decided by a jury. Alleyne, 133 S. Ct. at 2155. The judge may make factual findings that will impact the sentence imposed within that range, but the judge must retain discretion as to the sentence that will be imposed based on those facts. Booker, 543 U.S. at 233.

The government argues that, because Alleyne and Apprendi do not apply to revocation proceedings, Booker also does not apply. Aple. Br. at 20–26. We disagree

15

because <u>Alleyne</u> and <u>Apprendi</u> apply to criminal prosecutions, but <u>Booker</u> applies to sentencing. "Criminal proceedings generally unfold in three discrete phases": investigation, criminal prosecution, and sentencing. <u>Betterman v. Montana</u>, __ U.S. __, 136 S. Ct. 1609, 1613, (2016). The due process protections afforded to defendants vary with each phase. <u>Cf.</u> <u>id.</u> at 1613–18 (describing the protections against delay at each phase).

<u>Apprendi</u> and <u>Alleyne</u> apply to the second phase, the criminal prosecution. They establish the protection that each element of the crime be submitted to the jury and proved beyond a reasonable doubt. Revocation of supervised release is not part of a criminal prosecution, so defendants accused of a violation of the conditions of supervised release have no right to a jury determination of the facts constituting that violation. <u>See</u> <u>Morrissey v. Brewer</u>, 408 U.S. 471, 480 (1972) ("[T]he revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations."); <u>United States v. Cordova</u>, 461 F.3d 1184, 1186–88 (10th Cir. 2006) (citing <u>Morrissey</u> and explaining "why jury trial rights do not attach to revocation proceedings").

<u>Booker</u>, on the other hand, applies to the third phase, sentencing. During sentencing, unlike in a criminal prosecution, the judge may find additional facts and use those facts to impose any sentence within the statutory range; the defendant has no right to a jury trial on these additional facts. <u>Booker</u>, 543 U.S. at 233 ("[W]hen a trial judge exercises his [or her] discretion to select a specific sentence within a defined range, the

16

defendant has no right to a jury determination of the facts that the judge deems relevant.") However, <u>Booker</u> requires that the sentencing judge maintain discretion and, consequently, that the Sentencing Guidelines be viewed as advisory, not mandatory. <u>Id.</u> at 245.

Supervised release, including the term, conditions, revocation, and modification, is part of the sentence for the defendant's original crime of conviction. 18 U.S.C. § 3583(a) (referring to supervised release as "a part of the sentence"); <u>id.</u> § 3585(c), (d)(1), (d)(2), (e) (instructing courts, when imposing a term of supervised release, setting the conditions of supervised release, and terminating, extending, or revoking supervised release, to consider the § 3553(a) factors, which are "[f]actors to be considered in imposing a sentence," 18 U.S.C. § 3553(a)); <u>Johnson v. United States</u>, 529 U.S. 694, 700 (2000) (requiring courts to "[t]reat[] postrevocation sanctions as part of the penalty for the initial offense" in order to avoid "serious constitutional questions"); <u>Collins</u>, 859 F.3d at 1218 n.8 (referring to "the appropriate sentence following a violation of supervised release conditions" (emphasis added)); <u>United States v. Lonjose</u>, 663 F.3d 1292, 1297 n.3 (10th Cir. 2011) ("[C]onditions of supervised release are part of the Defendant's sentence."). Further, the United States Sentencing Guidelines, which were the subject of <u>Booker</u>, include policy statements regarding revocation of supervised release. 28 U.S.C. § 994(a)(3) (instructing the United States Sentencing Commission to promulgate and distribute "guidelines or general policy statements regarding . . . the provisions for modification of the term or conditions of supervised release and revocation of supervised

17

release"); U.S. Sentencing Guidelines Manual Ch. 7 (setting forth policy statements regarding violations of supervised release). <u>Booker</u>'s requirement that the sentencing judge retain discretion applies to all sentencing proceedings, including the imposition of a subsequent term of imprisonment following revocation of supervised release.[1]

---

[1] To the extent anyone argues that defendants serving terms of supervised release have no Sixth Amendment rights at all, and thus cannot benefit from the Court's decision in <u>Booker</u>, this assertion is stated too broadly.

It is true that, by its text, the procedures required by the Sixth Amendment apply only in "criminal prosecutions." U.S. Const. Amend. VI ("In all criminal prosecutions . . ."). Revocation is a part of the sentencing, not a part of the criminal prosecution, so the Sixth Amendment's protections cannot be directly invoked. <u>Cordova</u>, 461 F.3d at 1186 (quoting <u>United States v. Work</u>, 409 F.3d 484, 491 (1st Cir. 2005), for the proposition that "once the original sentence has been imposed in a criminal case, further proceedings with respect to that sentence [have not been] subject to Sixth Amendment protections"); <u>Jones</u>, 818 F.3d at 1102 ("The parties agree our case law holds that the Sixth Amendment does not apply to revocation hearings."); <u>Curtis v. Chester</u>, 626 F.3d 540, 544 (10th Cir. 2010) ("Sixth Amendment rights are not applicable in parole revocation hearings because those hearings are not 'criminal prosecutions.'"). Instead, general principles of due process govern the procedures that must be afforded a defendant in a revocation proceeding. <u>Morrissey</u>, 408 U.S. at 482 (holding "that the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others" and going on to discuss what process is due).

But holding that the Sixth Amendment does not require particular procedures in a revocation hearing is not the same as holding that a defendant, once convicted of any crime, loses all Sixth Amendment rights during the term of imprisonment and supervised release. To the contrary, we know that these defendants retain the right to be free from new criminal prosecutions that would violate the Fifth and Sixth Amendments. <u>Johnson</u>, 529 U.S. at 700 (noting the concern that imposing a subsequent term of imprisonment for a violation of the condition of supervised release would violate the defendant's right to a trial by jury, which is guaranteed by the Sixth Amendment, and right to be free from double jeopardy, which is guaranteed by the Fifth Amendment); <u>Collins</u>, 859 F.3d at 1216–17 (quoting <u>Johnson</u> and holding that the Fifth and Sixth Amendment rights of defendants on supervised release require us to interpret § 3583(e)(3) as setting penalties based on the original crime of conviction, not on the conduct which constituted the violation of the conditions of supervised release).

(continued...)

18

With that framework in mind, we turn to the statutory provision at issue here. By requiring a mandatory term of reimprisonment, 18 U.S.C. § 3583(k) increases the minimum sentence to which a defendant may be subjected. For example, when Haymond was originally convicted by a jury, the sentencing judge was authorized to impose a term of imprisonment between zero and ten years. See 18 U.S.C. § 2252(b)(2). After the judge found, by a preponderance of the evidence, however, that Haymond had violated a particular condition of his supervised release, the mandatory provision in § 3583(k) required that Haymond be sentenced to a term of reincarceration of at least five years, up to a maximum term of life. This unquestionably increased the mandatory minimum[2] sentence of incarceration to which he was exposed from no years to five years, yet the jury did not make the factual finding required to change his statutorily prescribed sentencing range. Instead, that finding was made by a judge by only a preponderance of the evidence. This violates the Sixth Amendment. Booker, 543 U.S. at 244.

---

[1](...continued)
Booker itself relied on the Sixth Amendment in holding that a judge, during sentencing, must retain discretion. Booker, 543 U.S. at 244. "It is an answer not motivated by Sixth Amendment formalism, but by the need to preserve Sixth Amendment substance." Id. at 237. Put another way, any proceeding that increases the authorized range of punishment to which a defendant may be subjected is, in substance, a criminal prosecution to which the protections of the Sixth Amendment apply in full. See id. at 231 ("If a State makes an increase in a defendant's authorized punishment contingent on the finding of a fact, that fact — no matter how the State labels it — must be found by a jury beyond a reasonable doubt." (quoting Ring v. Arizona, 536 U.S. 584, 602 (2002)).

[2] It is enough for our purposes that the mandatory minimum is increased. Thus, we need not address whether this provision also increased the statutory maximum sentence to which Haymond was exposed.

19

Second, 18 U.S.C. § 3583(k) is unconstitutional because it circumvents the protections of the Fifth and Sixth Amendments by expressly imposing an increased punishment for specific subsequent conduct. In Johnson v. United States, 529 U.S. 694 (2000), the Supreme Court made clear that, in order to avoid serious constitutional concerns, revocation of supervised release must be viewed as punishment for the original crime of conviction, not as punishment for the violation of the conditions of supervised release. Johnson, 529 U.S. at 699–700; id. at 700 (noting "the serious constitutional questions that would be raised by construing revocation and reimprisonment as punishment for the violation of the conditions of supervised release."); id. at 701 ("[P]ostrevocation penalties relate to the original offense."); Cordova, 461 F.3d at 1186 ("It is well-settled that supervised release is 'part of the penalty for the initial offense.'" (quoting Johnson, 529 U.S. at 700)). Specifically, these concerns include the fact that "the violative conduct need not be criminal and need only be found by a judge under a preponderance of the evidence standard, not by a jury beyond a reasonable doubt." Johnson, 529 U.S. at 700 (citing 18 U.S.C. § 3583(e)(3)). Further, "[w]here the acts of violation are criminal in their own right, they may be the basis for separate prosecution, which would raise an issue of double jeopardy if the revocation of supervised release were also punishment for the same offense." Id. "Treating postrevocation sanctions as part of the penalty for the initial offense, however (as most courts have done), avoids these difficulties." Id. (collecting cases). "We therefore attribute postrevocation penalties to the original conviction." Id.

Contrary to this requirement, § 3583(k) impermissibly requires a term of imprisonment based not on the original crime for which the defendant was properly convicted, but instead on the commission of a new offense—namely "any criminal offense under chapter 109A, 110, or 117, or section 1201 or 1591, for which imprisonment for a term longer than 1 year can be imposed."  18 U.S.C. § 3583(k).  By its plain text, § 3583(k) states that, if a qualifying defendant commits one of these enumerated crimes, "the court shall revoke the term of supervised release and require the defendant to serve a term of imprisonment . . . not less than 5 years."  Id.

If Haymond were to violate the terms of his supervised release by committing any crime not enumerated in § 3583(k) or by committing a technical violation, he would be subject to revocation under § 3583(e)(3).  If sentenced under § 3583(e)(3), he would face a term of reimprisonment properly limited by his original crime of conviction, with an absolute *maximum* term of two years.  The district court could have sentenced Haymond to life imprisonment *only* if it found that Haymond had violated the conditions of his supervised release by committing one of the subsequent crimes enumerated in § 3583(k), in which case it would have no choice but to impose a *mandatory minimum* term of five years up to life.  The available punishment is tied directly to the nature of the new conduct that serves as the basis for the revocation.

Regardless of the nature or severity of the defendant's original crime of conviction, § 3583(k) imposes a mandatory minimum five-year term of imprisonment for only those specific offenses enumerated, while all other violations are subject to the

21

maximum terms set in § 3583(e)(3). By separating these crimes from other violations, § 3583(k) imposes a heightened penalty that must be viewed, at least in part, as punishment for the subsequent conduct—conduct for which the defendant has not been tried by a jury or found guilty beyond a reasonable doubt. This, the Court has said, is not permitted. See Johnson, 529 U.S. at 699–701.

To be sure, the sentencing judge can and, according to the Sentencing Guidelines, should consider the severity of the conduct by which a defendant violated the conditions of his or her supervised release. A more serious violation might well recommend a longer term of reimprisonment. But, if we wish to maintain the premise that revocation of supervised release is a punishment for the original crime of conviction, Congress must set the authorized term of reimprisonment based on the severity of that original crime. In fact, our recent opinion in United States v. Collins, 859 F.3d 1207 (10th Cir. 2017), is dispositive on this point. In Collins, we cited Johnson and held that 18 U.S.C. § 3583(e)(3) sets the maximum terms of reimprisonment following revocation of supervised release based on the severity of the *original crime of conviction*, not based on the conduct that constituted the violation, because setting the punishment based on the new conduct would violate the Fifth and Sixth Amendments. Collins, 859 F.3d at 1217 ("[C]onstru[ing] the 'offense that resulted in' language of § 3583(e)(3) as referring to the violative conduct resulting in revocation . . . places us squarely at odds with the Fifth and Sixth Amendments. Our interpretation of § 3583(e)(3)—that the 'offense that resulted in' language is meant to refer to the offense for which the defendant was first sentenced to

22

supervised release—avoids these same constitutional difficulties."). But that violation of the Fifth and Sixth Amendments—setting new punishment that is more severe than would otherwise be allowed by statute because of the severity of new conduct—is exactly what § 3583(k) purports to do.

As written, § 3583(k) expressly increases the available penalty for *only* these particular violations, so it is not based on the original crime of conviction, but on the nature of the subsequent violative conduct. This construction, like the mandatory language discussed above, effectively transforms the revocation proceeding into a criminal prosecution, imposing punishment for new conduct. "It has been settled throughout our history that the Constitution protects every criminal defendant 'against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.'" See Booker, 543 U.S. at 230 (quoting In re Winship, 397 U.S. 358, 364 (1970)). "It is equally clear that the 'Constitution gives a criminal defendant the right to demand that a jury find him guilty of all the elements of the crime with which he is charged.'" Id. (quoting United States v. Gaudin, 515 U.S. 506, 511 (1995)). Thus, § 3583(k) violates the Sixth Amendment because it punishes the defendant with reincarceration for conduct of which he or she has not been found guilty by a jury beyond a reasonable doubt, and it raises the possibility that a defendant would be charged and punished twice for the same conduct, in violation of the Fifth

Amendment.[3]  See Johnson, 529 U.S. at 700.

**IV**

As for the appropriate remedy, "we must 'refrain from invalidating more of the statute than is necessary.'"  Booker, 543 U.S. at 258 (quoting Regan v. Time, Inc., 468 U.S. 641, 652 (1984) (plurality opinion)).  "[W]e must retain those portions of the Act that are (1) constitutionally valid, (2) capable of 'functioning independently,' and (3) consistent with Congress' basic objectives in enacting the statute."  Id. at 258–59 (quoting Alaska Airlines, Inc. v. Brock, 480 U.S. 678, 684 (1987)).  "Whether an unconstitutional provision is severable from the remainder of the statute in which it appears is largely a question of legislative intent, but the presumption is in favor of severability."  Regan, 468

---

[3]  Haymond also argues that his sentence violates the statutory maximum.  Aplt. Br. at 27.  Most interestingly, he means not the statutory maximum authorized under the supervised release statute for his original crime of conviction, but the statutory maximum set by statute for his alleged new offense, possession of child pornography.  See id. 46–47.  The fact that Haymond attempts to invoke the statutory maximum allowable for his alleged new crime highlights the fact that the term of incarceration imposed under § 3583(k) is most obviously viewed as a punishment, not for the original crime, but for the defendant's new conduct.  As discussed, such an approach to revocation of supervised release is not permissible.  Johnson, 529 U.S. at 700.

Haymond's argument on this point is otherwise unavailing.  The statutory maximum sentence allowed for a particular subsequent crime has no bearing on the length of the term of reimprisonment allowed for a violation of supervised release.  This is because, as discussed, "postrevocation penalties relate to the original offense," not the new conduct.  Johnson, 529 U.S. at 701.  And the violative conduct need not be criminal at all.  Id. at 700.  Conduct which is not criminal carries no permissible term of imprisonment, yet, if that conduct violates the conditions of a defendant's supervised release, it may be the basis for a term of reimprisonment following revocation of supervised release.  See id.; 18 U.S.C. § 3583(e)(3).  Thus, the statutory maximum sentence to which Haymond might be subjected if he were convicted of possessing child pornography is completely irrelevant to the term of reimprisonment that may be imposed upon him for a violation of the conditions of his supervised release.

24

U.S. at 653. "[T]he unconstitutional provision must be severed unless the statute created in its absence is legislation that Congress would not have enacted." Alaska Airlines, Inc., 480 U.S. at 685.

The first sentence of § 3583(k) provides:

> Notwithstanding subsection (b), the authorized term of supervised release for any offense under section 1201 involving a minor victim, and for any offense under section 1591, 1594(c), 2241, 2242, 2243, 2244, 2245, 2250, 2251, 2251A, 2252, 2252A, 2260, 2421, 2422, 2423, or 2425, is any term of years not less than 5, or life.

Id. This sentence merely sets forth the applicable term of supervised release available based on the original crime of conviction, so it creates none of the concerns raised in this appeal regarding the imposition of a mandatory minimum sentence as a result of certain subsequent conduct. The next two sentences, however, provide:

> If a defendant required to register under the Sex Offender Registration and Notification Act *commits any criminal offense under chapter 109A, 110, or 117, or section 1201 or 1591, for which imprisonment for a term longer than 1 year can be imposed,* the court *shall* revoke the term of supervised release and require the defendant to serve a term of imprisonment under subsection (e)(3) without regard to the exception contained therein. *Such term shall be not less than 5 years.*

18 U.S.C. § 3583(k) (emphasis added). The italicized language violates the Constitution by increasing the term of imprisonment authorized by statute based on facts found by a judge, not by a jury beyond a reasonable doubt, and by tying the available punishment to subsequent conduct, rather than the original crime of conviction. Thus, we must decide whether the statute can function independently without these two sentences.

We conclude that the remaining provisions of § 3583, and of the sentencing code,

25

18 U.S.C. §§ 3551–3586, can function independently, without the isolated provision of § 3583(k) that provides for a mandatory sentence of five years' reimprisonment to be imposed when supervised release is revoked based on commission of a specific set of subsequent crimes. Aside from three references to § 3583 generally, no other provision of the sentencing code refers to § 3583(k). Without this unconstitutional provision, all violations of the conditions of supervised release would be governed by § 3583(e)(3), which appropriately ties the available punishments for revocation of supervised release to the original crime of conviction. Thus, the invalidation of this isolated unconstitutional provision would have no significant effect upon the sentencing code as a whole. In fact, Congress did originally enact this legislation without the challenged provision, which was only added in 2006.[4] Thus, we cannot conclude that Congress would have been unwilling to enact the legislation without this unconstitutional provision. The last two sentences of § 3583(k) are unconstitutional and unenforceable.

## V

For the foregoing reasons, we AFFIRM the revocation of Haymond's supervised release, we VACATE his sentence following that revocation, and we REMAND for

---

[4] Congress added subsection (k) to § 3583 in 2003 and extended the authorized term of supervised release for sex offenders to "any term of years or life." See PROTECT Act of 2003, Pub. L. No. 108-21, § 101, 117 Stat. 650, 651–52 (2003). A 2006 amendment added the minimum five year term of imprisonment following revocation for certain subsequent crimes and provided that the ordinary term limits in subsection (e)(3) did not apply. Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, § 141(e)(2), 120 Stat. 587, 603 (2006).

resentencing under § 3583(e)(3) without consideration of § 3583(k)'s mandatory

minimum sentence provision or its increased penalties for certain subsequent conduct.

**No. 16-5156, United States v. Andre Ralph Haymond**

**KELLY**, Circuit Judge, concurring in part and dissenting in part.

I concur that the government met its burden of showing by a preponderance of the evidence that Mr. Haymond knowingly possessed child pornography. I disagree with the court that some of the district court's factual findings supporting this conclusion are clearly erroneous. I also dissent from the court's holding that 18 U.S.C. § 3583(k) is unconstitutional.

Our review of factual findings is "significantly deferential." Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal., 508 U.S. 602, 623 (1993).

> If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.

Anderson v. City of Bessemer City, 470 U.S. 564, 573–74 (1985).

When looking at the record as a whole, the district court's view of the evidence was permissible. For instance, this court holds that it is clearly erroneous that "on the phone" means "saved, downloaded, or otherwise accessible on the phone in some application for viewing at the user's discretion." Ct. Op. at 7 (brackets, emphasis, and citation omitted). But the district court's interpretation is supported by Mr. Penrod's testimony that the Gallery3D application searches the phone for existing images — and that, unlike with images stored in the browser cache, there was no alternative explanation (i.e., other than that the images were already on the phone) for how the images were stored in the cache. 2 R. 167–68. Mr. Penrod's later clarification of the different ways

the images could have been saved or downloaded to the phone — via text message, social media, email, etc. — does not make the statement any less true, or any less supported by the evidence.

Likewise, the court holds that it is clearly erroneous that "Haymond knowingly took some volitional act related to the Gallery Images that resulted in the images being on his phone in a manner consistent with knowing possession" and that "the path demonstrates that Haymond took prior volitional actions with regard to the Gallery Images." Ct. Op. at 7 (brackets, emphasis, and citation omitted). These district court findings are ostensibly error based on Mr. Penrod's clarification that, because there was no metadata associated with the images, one could not say with certainty how the images came to be on the phone. Id. at 7–8; see 1 R. 186. But these findings are not clearly erroneous merely because the technological path could not clarify with 100% accuracy how the images got on the phone. The district court reasonably concluded that the most likely explanation was that Mr. Haymond did something to allow them to be there. Indeed, the factual findings that this court agrees were proper seem to support this conclusion: Mr. Haymond had exclusive use of his phone, the images were on the phone, the images were accessible to Mr. Haymond, and the images were similar to those he was previously convicted of illegally possessing. Viewed in light of the surrounding evidence, simply because there are two views of Mr. Penrod's testimony does not mean that the district court clearly erred in choosing one over the other.

As for the constitutionality of 18 U.S.C. § 3583(k), I disagree with the court's conclusion that United States v. Booker, 543 U.S. 220 (2005), applies to revocation proceedings. Ct. Op. at 15–16. Mr. Haymond was tried and found guilty beyond a reasonable doubt of the original offense, and those jury-found facts supported the sentence imposed. Booker applied to that sentence. Mr. Haymond also was instructed that supervised release would be part of that sentence and that there were certain restrictions he had to abide by lest his supervised release be revoked.

As the Supreme Court has explained, revocation of supervised release "need not be criminal and need only be found by a judge under a preponderance of the evidence standard, not by a jury beyond a reasonable doubt." Johnson v. United States, 529 U.S. 694, 700 (2000). That the full panoply of rights were guaranteed to Mr. Haymond during his initial criminal proceeding does not mean that they attach once more during a revocation proceeding. That proceeding is, after all, "not a stage of a criminal prosecution." Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973).

Up to this point, the court and I agree. We disagree that § 3583(k) becomes unconstitutional because it "increases the mandatory minimum penalty to which a defendant may be subjected, and does so based on facts not found by the jury." Ct. Op. at 14. Were the court correct, the problem it identifies seems like it would be true of all revocation proceedings: if a defendant is sentenced to any term of supervised release, the fact that the release can then be revoked and the defendant be sent back to prison for an *additional* term means that "the penalty to which a defendant *may be subjected*" has been

increased based on facts not found by a jury. <u>Id.</u> (emphasis added).

In other words, unless either (a) all revocation proceedings must empanel juries for fact-finding (which the Supreme Court, with good reason, has told us is not the case) or (b) the revocation proceeding is treated as a new criminal prosecution (which the Supreme Court also has told us is not the case), it is hard to understand why under current precedent <u>Booker</u> would apply but <u>Apprendi</u> and <u>Alleyne</u> would not. While postrevocation penalties might be considered attributable to the original conviction, the revocation proceeding is neither part of that criminal prosecution nor is it a new criminal prosecution. <u>See</u> <u>Johnson</u>, 529 U.S. at 700.

The Supreme Court has also answered the court's second objection to § 3583(k) — that it "circumvents the protections of the Fifth and Sixth Amendments by expressly imposing an increased punishment for specific conduct." Ct. Op. at 20. The court cites <u>Johnson</u> for the proposition that revocation of supervised release is not "punishment for the violation of the conditions of supervised release," <u>id.</u> (citing 529 U.S. at 699–700), but then fails to take the Supreme Court at its word. This is apparently because Congress has delineated different terms of revocation for different breaches of supervised release. <u>Id.</u> at 21 (comparing § 3583(k), which ties its requirement of at least five years' revocation to the commission of enumerated sex offenses, with § 3583(e)(3), which sets limits on the resulting terms of reimprisonment based on the "offense that resulted" in the underlying supervised release). The court takes issue with the fact that had Mr. Haymond violated the conditions of his supervised release in a manner other than by committing one of the

crimes referenced in § 3583(k), then he would have been subject to revocation under § 3583(e)(3) and faced a shorter term of reimprisonment. Ct. Op. at 21. Therefore, the court concludes, subsection (k) is actually punishment for the new crime.

But the distinction cannot be (and I do not take the court to contend) that revocation based on the commission of a new crime is punishment for the new crime, because § 3583(d) explicitly requires the sentencing court to include "as an explicit condition of supervised release, that the defendant not commit another . . . crime during the term of supervision." If a defendant on supervised release did so, then his release could be revoked under § 3583(e)(3). The court rightly does not contend that this would be a new "punishment."

Instead, the distinction, apparently, is that the terms of revocation differ based on what kind of new crime the defendant committed. But I see no reason why Congress cannot make that distinction. As the Sentencing Guidelines explain, under the "breach of trust" theory applicable to the revocation of supervised release, "the nature of the conduct leading to the revocation [can] be considered in measuring the extent of the breach of trust." U.S. Sentencing Guidelines Manual § 7A3(b) (2016). In my view, Congress can determine that the commission of certain crimes constitutes a more serious breach of trust warranting a longer term of revocation. Doing so does not thereby make the revocation proceeding a new criminal prosecution, nor would it be inconsistent with our holding in United States v. Collins, 859 F.3d 1207, 1210 (10th Cir. 2017), to conclude that the language in § 3583(e)(3) — "the offense that resulted in the term of supervised release"

— refers to the original crime.  <u>Cf.</u> Ct. Op. at 22.

Ultimately, we should not jump ahead of the Supreme Court when it has already spoken on this issue.  Any tension between the supervised release scheme approved in <u>Johnson</u> and the rationale of the <u>Apprendi</u> / <u>Booker</u> line of cases is for the Supreme Court itself to resolve.  <u>See</u> <u>Rodriguez de Quijas v. Shearson / Am. Express, Inc.</u>, 490 U.S. 477, 484 (1989).  Therefore, I would affirm the revocation of supervised release and the resulting sentence.